343 So.2d 958 (1977)
H. Stanley OVERSTREET and University City Bank, a Banking Association, Appellant,
v.
Richard Douglas BISHOP, Appellee.
No. BB-223.
District Court of Appeal of Florida, First District.
March 24, 1977.
*959 Herbert T. Schwartz of Schwartz & Dearing, Gainesville, for appellant.
James S. Quincey, Gainesville, for appellee.
ERVIN, Judge.
This is an appeal by defendant Overstreet from a final summary judgment entered in favor of appellee Bishop who had sought declaratory judgment of his rights under an alleged balloon mortgage. Overstreet was trustee of a 384 acre tract of land. He, along with his agents Daniel and McTeer, entered into a contract to sell the land to Bishop. The total sale price was in excess of $782,000.00. The land was encumbered by two mortgages which Bishop agreed to assume. A third mortgage and note were prepared by Bishop's attorney, Gary Moody, providing that $13,425.14 principal plus accrued interest at the rate of 7 1/2% annually were to be paid at the end of each of the first four years from the date of the note, with the remaining $80,553.70, plus accrued interest, to be paid in a lump sum within five years from date of execution.
The note and mortgage were then forwarded by Moody to Overstreet's attorney, who examined them and made the following changes by (1) increasing the interest on the note from 7 1/2% to 10%, (2) deleting a paragraph relieving Bishop from personal liability in the event of default, and (3) adding a provision stating that in the event a default in payments on the two prior mortgages occurred, the third mortgage would be considered in default. The note and mortgage were then prepared in final form by Overstreet's attorney and returned to Moody. Later the closing was held in the office of the lawyer representing Overstreet, at which time Mr. Overstreet was present. Several weeks afterward, Moody discovered that the mortgage was a balloon mortgage and subject to the proscriptions of Section 697.05, Florida Statutes (1975).[1] He then reported such fact to Bishop. An action for declaratory judgment was brought by Bishop seeking a determination of his rights under the note and mortgage. Subsequently, the trial court granted summary judgment in favor of Bishop, extended the maturity date of the note and mortgage an additional five years, and ordered that the entire interest charged be forfeited.
Overstreet's sole point on appeal contends that Bishop should be equitably estopped under the facts from asserting the statutory defect.
*960 The elements of equitable estoppel or estoppel in pais as related to the party estopped are:
"(1) [C]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than and inconsistent with those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the real facts." 12 Fla.Jur., Estoppel and Waiver, Section 30 (1957).
We agree with the trial court that Overstreet did not sustain his burden to prove clearly and satisfactorily that the three elements were established. While Overstreet arguably may have presented an adequate showing as to the first two elements, he has failed to present proof of the third element, i.e., that Bishop had knowledge prior to his execution of the mortgage that the mortgage was a balloon mortgage and was therefore subject to the forfeiture provisions of Section 697.05.
It was necessary for Overstreet to show the active or acquiescing party had facts concerning the defect solely within his knowledge. Cox v. LaPota, 76 So.2d 662 (Fla. 1964). As our Supreme Court stated in Price v. Stratton, 45 Fla. 535, 33 So. 644, 647 (Fla. 1903): "... where the parties have equal knowledge, or the same means of ascertaining the truth, there can be no estoppel."
Both parties were represented by attorneys prior to the execution of the documents. Counsel for Overstreet made substantial changes in the initial draft prepared by Bishop's attorney, and in fact drew the final instruments. The closing was at the office of Overstreet's attorney. Clearly both parties to the sale had "equal knowledge or the same means of ascertaining the truth" of the documents' terms. Additionally, the record shows that the Overstreet's attorney had an extensive real estate practice and three times more legal experience than Moody. It is therefore not unreasonable to conclude that all parties were innocently unaware of the legal consequences of the mortgage they executed.
This case does not involve the unconscionable overreaching of a mortgagor who sought to invoke the provisions of Section 697.05 in Lupoff v. Hartog, 237 So.2d 588 (Fla. 4th DCA 1970). In Lupoff, the mortgagor, an attorney, prepared a balloon mortgage on behalf of the mortgagee, a widow who had no counsel. Following default, a foreclosure action was brought and the mortgagor sought enforcement of Section 697.05 since the required statutory legend was not placed upon the face of the mortgage. The trial court's judgment precluding the mortgagee from entitlement to interest and attorney's fees was reversed. The Fourth District Court of Appeal held:
"In this case in dealing with a layman, a widow, who had no counsel, the mortgagor as an attorney was charged with a high degree of care and responsibility incident to the mortgage papers he prepared or caused to be prepared for a loan for his own benefit, and it would appear unconscionable for him to exploit a condition which he created. The relationship far exceeded that of debtor and creditor when he assumed the responsibility to prepare the mortgage instruments to be utilized in the mortgage transaction in which he became the principal benefactor as mortgagor. State ex rel. The Florida Bar v. Delves, Fla. 1963, 160 So.2d 114." 237 So.2d at 589.
The distinction between the facts in Lupoff and those in the case on review is obvious. Here the relationship was the customary arms length transaction between debtor and creditor. Had Bishop's attorney acted on behalf of both parties, unquestionably the Lupoff decision would be controlling.
We feel it necessary to note that we find the forfeiture provisions of the statute especially harsh when applied to the circumstances involved. The mortgagor, Mr. Bishop, was an experienced man of business. He unquestionably knew the terms of the mortgage even in the absence of advice *961 from counsel. Mr. Bishop was well informed of the payment schedule and amounts to be paid, not only by his attorney but also from the real estate agents representing him. It is inconceivable in a transaction of this magnitude that Mr. Bishop would have been any less informed had the required legend been placed upon the mortgage.
No attack is made upon the constitutionality of the statute. Indeed, the availability of such relief has been foreclosed by the Supreme Court's opinion in Winner v. Westwood, 237 So.2d 151 (Fla. 1970). We understand the legislative intent behind the statute's enactment as stated in Winner:
"Its purpose was to regulate the practice of drafting mortgages in terms which allowed for payment of relatively small installments for a period of time of relatively short duration, at the end of this period the balance becoming due in full. This technically legal practice became the subject of abuse, particularly when applied to second and third mortgages and the like, because of use in situations where the tentative mortgagee wished to give the illusion of `easy payments', while saying little about the ultimate consequences." 237 So.2d at 152.
Still, we may only speculate whether enforcement of the statute might more often act as a snare to the unwary mortgagee than as a safeguard to the uninformed mortgagor. Nevertheless the wisdom in enacting such a statute is an argument which may only be addressed to the legislature  not to the courts.
Affirmed.
BOYER, C.J., and DURDEN, J. ROBERT, Associate Judge, concur.
NOTES
[1] Which provides in part and subject to certain exceptions that any mortgage in which the final payment is more than twice the amount of the periodic payment is a balloon mortgage. It further requires that it be stated on the mortgage: (1) the fact it is a balloon mortgage, and (2) the final payment due upon maturity together with interest accrued. The failure of the mortgagee to comply with these requirements shall cause the maturity date extended by dividing the final payment by the amount due under each periodic payment and the quotient obtained is the number of periods the mortgage is extended. It is also provided that interest and attorney's fees shall be forfeited in the event of noncompliance.