512 So.2d 994 (1987)
BRICKELL BAY CLUB CONDOMINIUM ASSOCIATION, INC., Appellant/Cross-Appellee,
v.
William HERNSTADT and Judith Hernstadt, His Wife, Appellees/Cross-Appellants.
No. 85-589.
District Court of Appeal of Florida, Third District.
August 18, 1987.
Rehearing Denied October 7, 1987.
*995 Carlton, Fields, Ward, Emmanuel, Smith & Cutler and Alan C. Sundberg and Sylvia Walbolt, Tallahassee, for appellant/cross-appellee.
Hall, O'Brien and Cohen and Richard F. O'Brien, III, Miami, for appellees/cross-appellants.
Before HUBBART, NESBITT and FERGUSON, JJ.
PER CURIAM.
Brickell Bay Condominium Association, Inc. appeals from a judgment in favor of the Hernstadts, unit owners, in a dispute over ownership of a roof structure in a condominium building.
The Hernstadts converted a structure located on the roof of the building, adjacent to their unit, into a bathroom and bedroom to be used for servant quarters as part of their unit. The structure, which was not included in the original plans, was added during the construction of the building for the sole purpose of housing air conditioning equipment for a restaurant and club located in the unit now owned by the Hernstadts.[1] Conversion of the structure was commenced by the Hernstadts without obtaining the Association's prior written approval as is required by the Declaration of Condominium.
It was not disputed that the Association gave the Hernstadts formal notice, before they closed on the purchase of their units, that the air conditioning room was not part of their unit. It is also agreed that the Association did not give approval to the Hernstadts' proposed renovation of the roof structure. In fact, the Hernstadts' proposed plan was specifically disapproved by the Association's engineers before the renovations began. After renovations of the structure had commenced, and in connection with a lawsuit filed by the Hernstadts regarding a leaky roof, the Association, through its attorney, advised the Hernstadts:
[T]he structure over [the Hernstadts' unit] is the property of the association and your client is trespassing.
The renovations continued, in conjunction with renovations within the Hernstadts' own unit, for some nine months. During that time, the parties were still attempting to resolve the dispute over the Hernstadts' right to use the structure. Two months after the work was completed the Association demanded that the Hernstadts discontinue use of the air conditioning room unless 75 percent of the owners gave the required consent.
On a separate point the facts show that the Association refused to amend the Declaration of Condominium to provide for the completed division of the Hernstadts' Terrace Suite "A" into two smaller residential units. The Hernstadts complained that failure to amend the Declaration, as had been agreed to, prevented a sale of one of the units to a prospective purchaser. It was uncontroverted, however, that the Association had repeatedly offered to amend the Declaration to reflect the division of the Hernstadts' unit into two apartments so long as the amendment did not include the disputed roof top structure. The Hernstadts refused to execute an amendment which did not recognize the air conditioning room as additional living space for their exclusive use and occupancy. Instead, they submitted to the Association a proposed amendment which provided:
The Structure [the rooftop room] shall constitute a Limited Common Element and the HERNSTADTS, their successors and assigns, shall be entitled to the exclusive use and possession of the Structure... .
A fourth proposed Amendment submitted by the Hernstadts, which referred only to the Terrace Suite, was accompanied by a reservation of rights agreement as to the rooftop structure. The Association declined *996 to execute the Hernstadts' proposed amendments or the reservation of rights agreement.
Adopting the arguments advanced by the Hernstadts, the trial court entered a Final Judgment ordering
1. The Hernstadts be and are hereby awarded the exclusive use and occupancy of the structure over the Terrace A ... which they have converted to be an integral part of the living area ... and the Association is estopped to deny them such exclusive use and occupancy.
3. The Hernstadts be and are hereby awarded damages against the Association attributable to the loss of the contract for sale of the smaller apartment made out of Terrace A... .
The Hernstadts contend that the failure of the Association to at least attempt affirmatively to prevent the renovations justifies application of waiver and estoppel principles. We disagree.
A Declaration of Condominium is a requirement of section 718.303(1), Florida Statutes (1985), for the governance of relationships between condominium unit owners and the condominium association. The Declaration of Condominium, observed the court in Pepe v. Whispering Sands Condominium Association, 351 So.2d 755 (Fla. 2d DCA 1977),
is more than a mere contract spelling out mutual rights and obligations of the parties thereto  it assumes some of the attributes of a covenant running with the land, circumscribing the extent and limits of the enjoyment and use of real property.
A Declaration of Condominium is strictly construed to preclude any use not explicitly authorized by the Declaration. Fountains of Palm Beach Condo., Inc. No. 5 v. Farkas, 355 So.2d 163 (Fla. 4th DCA 1978).
A starting point in this review of the law of waiver and estoppel is the authorities which hold that the estoppel principle generally has no application to transactions which are forbidden by statute or ordinance or which are contrary to public policy. State ex rel. Schwartz v. City of Hialeah, 156 So.2d 675 (Fla. 3d DCA 1963); Confederation Life Ass'n v. Conte, 254 So.2d 45 (Fla. 3d DCA 1971), quashed on other grounds, 272 So.2d 130, cert. denied, 410 U.S. 959, 93 S.Ct. 1422, 35 L.Ed.2d 693. Estoppel is an equitable doctrine which is applied only where to refuse its application would be virtually to sanction the perpetration of a fraud. McAllister Enterprise Inc. v. McAllister Hotel, Inc., 219 So.2d 114 (Fla. 3d DCA 1969).
The courts of this state have uniformly refused to apply estoppel principles to permit alterations of condominium property without written permission of the Association. Schmeck v. Sea Oats Condo. Ass'n, Inc., 441 So.2d 1092 (Fla. 5th DCA 1983); Ladner v. Plaza Del Prado Condominium Ass'n., 423 So.2d 927 (Fla.3d 1982); Chattel Shipping and Investment, Inc. v. Brickell Place Condominium Ass'n, Inc., 481 So.2d 29 (Fla. 3d DCA 1985); Constellation Condominium Ass'n. v. Harrington, 467 So.2d 378 (Fla. 2d DCA 1985). In Fountains of Palm Beach Condominium, Inc. No. 5 v. Farkas, supra, the court rejected the same argument presented here that the failure of the Association to object to the unit owner's intent to alter the common elements should operate as an estoppel or waiver. Instead it held:
Neither ... the noncommittal, though apparently rather favorable, attitude of the management firm [could] be said to have justified any belief by the owner that she could safely ignore the requirement of the Declaration of Condominium that she obtain the prior written consent of both management and the association before altering the common elements.
355 So.2d at 164.
The cases relied upon by the appellee are not applicable as they applied estoppel principles where the unit owner had relied upon affirmative acts of the Association permitting alterations to the common elements or where the Association's previous nonenforcement of its rules had led other unit owners to act in reliance on a continuation of that policy. Fifty-Six Sixty Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. *997 1979); Fifty-Six Sixty Collins Ave. Condominium v. Dawson, 354 So.2d 432 (Fla. 3d DCA 1978); Plaza Del Prado Condominium Association v. Richman, 345 So.2d 851 (Fla. 3d DCA 1977).
The Declaration of Condominium in this case required written approval by the Association for an alteration to the common elements. The Hernstadts were aware of the requirement before they started renovating the roof structure. Under Florida law no estoppel by silence can arise unless the party asserting the estoppel claim is ignorant of the truth. Ennis v. Warm Mineral Springs, Inc., 203 So.2d 514, 520 (Fla. 2d DCA 1967), cert. denied, 210 So.2d 870 (Fla. 1968). There are no factors presented which justify application of waiver and estoppel principles.
The evidence does not support the Hernstadts' contention that the Association's refusal to amend the Declaration of Condominium, to reflect a division of their unit into two smaller units, caused a failure of the sale of one of their units. It was the Hernstadts' refusal to execute an agreement pertaining only to the subdivision of Terrace Suite A which frustrated the sale. The Association had no obligation to enter into any agreements regarding the disputed roof structure.
An established principle of law is that a party's good faith cooperation is an implied condition precedent to performance of a contract. Fernandez v. Vasquez, 397 So.2d 1171, 1174 (Fla. 3d DCA 1981). Cooperation of the Hernstadts was a prerequisite to an amendment of the Declaration of Condominium to reflect the subdivision of their unit. One who prevents the performance of a contractual condition precedent cannot avail himself of his own wrong by claiming damages owing to the other party's failure to perform as promised. Knowles v. Henderson, 156 Fla. 31, 22 So.2d 384, 386 (Fla. 1945). Any damages suffered by the Hernstadts from a failed sale of one of their units was not the fault of the Association.
Four of the five points raised by cross-appeal are mooted by the rulings on the main appeal. The remaining point, whether the court committed error in failing to award damages to the Hernstadts for roof leaks, window leaks and water damage, is without merit. The Hernstadts' own witnesses could not say that the damages were not the same as those for which recovery was obtained in an earlier lawsuit.
The judgment for the Hernstadts is reversed and the cause is remanded with instructions to enter judgment for the Association; the cross-appeal is affirmed.
NOTES
[1] Ninety percent of the structure is situated over common elements of the building and 10 percent is located over the Hernstadt's unit.