537 So.2d 1074 (1989)
C. Neil JAMES, et al., Appellants,
v.
Harold K. SMITH, et al., Appellees.
No. 87-1971.
District Court of Appeal of Florida, Fifth District.
January 19, 1989.
*1075 William N. Asma, Winter Garden, for appellants.
Robert B. Worman, Orlando, for appellees.

ON MOTION FOR REHEARING
COBB, Judge.
Pursuant to motion for rehearing, we withdraw the original opinion herein issued on November 17, 1988, and substitute therefor the following:
The issue on this appeal is whether the trial court properly refused to enforce certain deed restrictions pertaining to a subdivision in Orange County, Florida. The defendants below, Harold and Alice Smith, and their corporation, King Building Systems, Inc. (said defendants hereinafter designated as King), purchased Lot 4 in Lake Nally Woods Subdivision in 1985. King was aware of the restrictions and unsuccessfully sought to obtain a "release" from them from the Lake Nally Woods Homeowners Association in respect to the provisions proscribing horses, detached barns, and wire fences. Thereafter, the Association advised King of other "apparent violations" of the deed restrictions: clearing of land prior to filing of plans with the Association's architectural control committee; destruction of large trees; and removal of a lake pump. The Association also warned King about using metal structures and constructing fences beyond the back house line.
Despite objections from the Association, King cleared the property, removed trees, erected a fence surrounding the entire lot, erected a metal stable and recreation building, and stabled two ponies on the property. A travel trailer was also placed on the property to house a security guard during construction.
C. Neil James and several other members of the Association (hereinafter designated as James) sought injunctive relief to enforce the deed restrictions against King. In a non-jury trial the court found that the only clear and unambiguous restriction violated by King was the use of metal as an exterior building material on the barn. The court found the fences to be merely "temporary," that the restrictions were vague and contradictory as to placement of fences, that the control committee's approval authority was vague and unenforceable, and that King's ponies could be classified *1076 as "domestic pets," an exception to the deed restriction against animals. James appeals, contending the trial court erred in its construction of the deed restrictions pertaining to King's ponies, the wire fences, the separate metal barn, construction of any building prior to the main residence, the requirement of plan approval by the corporate developer or his assignee, and the presence of a trailer for the caretaker. James also claims that attorney fees and costs should have been awarded as damages to the plaintiffs below pursuant to provisions of the deed restrictions. We consider these matters seriatim.

I. The Ponies

The initial issue on appeal concerns the correctness of the trial court's decision that the stabling of two ponies on Lot 4 did not violate paragraph 7 of the deed restrictions. Paragraph 7 states:
No horses, mules, ponies, donkeys, burros, cattle, sheep, goats, swine or other like animals and no fowl, rodents or reptiles shall be raised on any lot, provided, however, that nothing herein shall prevent the keeping of a domestic pet.
The trial court's finding in regard to the foregoing paragraph was:
9. Paragraph 7 of the deed restrictions precludes the raising of horses on any lot; however, developers have excluded from this restriction the keeping of domestic pets. This restriction is vague, ambiguous and confusing as to whether or not the developers intended the keeping of two ponies on the property would be precluded, since the unrefuted testimony of the Defendant, HAROLD K. SMITH, was that the ponies presently being maintained on the property are domestic pets of his family. According to Webster's Third New International Dictionary, Unabridged, horses are considered to be "domestic animals", and pets are defined as "domesticated animals kept for pleasure rather than utility, or animals treated with unusual kindness or consideration,". The Defendant's stabling of two ponies on Lot 4 is not a violation of any enforceable deed restrictions.
James contends that the residential quality of the neighborhood should be preserved and that the term "domestic pet" should be given its plain meaning in a usual and ordinary sense, i.e., household pet. He also argues that if this provision is not enforced, homeowners at Lake Nally could keep as many horses, cattle, etc., as they desired on their respective properties as long as they called those animals (including fowl, rodents or reptiles) "domestic pets." In addition, he suggests that even if some ambiguity is found within the covenants, in order to render the provision unenforceable, a finding of "substantial ambiguity" is required.
King, on the other hand, argues that the restriction against ponies is qualified when they are kept as "domestic pets," and that if the developer had not intended that some ponies might be kept as domestic pets, it would simply have stopped the sentence without the qualifying phrase. King suggests that a hamster and a parakeet would be thought of as pets even though the categories of rodent and fowl are grouped with horses, cattle and mules. King further points out that pens, yards, and houses for pets are allowed within the utility yard, and argues that this suggests the possibility of large-type animals being present.
In Orange County Garden Civic Association v. Harris, 382 So.2d 1340 (Fla. 5th DCA 1980), we noted that substantial ambiguities in restrictive covenants will be resolved against the party claiming the right to enforce the restriction. Moreover, deed restrictions are to be strictly construed in favor of the landowner and the free use of his property. Moss v. Inverness Highlands South and West Civic Association, Inc., 521 So.2d 359 (Fla. 5th DCA 1988). It is beyond dispute that horses and ponies are domestic animals. Groh v. Hasencamp, 407 So.2d 949, 952 (Fla.3d DCA 1982); Moessinger v. Johnson, 292 So.2d 606 (Fla. 2d DCA 1974). Even normally wild animals such as deer and hawks may become domesticated pets. State v. Lee, 41 So.2d 662 (Fla. 1949). In our view the exception in the restrictive covenant for *1077 "a domestic pet" creates a sufficient ambiguity to allow for a factual determination by the trial court in regard to the two ponies herein at issue. We believe the intent of the restrictive covenant in regard to animals was to create a desirable, pleasant residential area, and that the exception relating to "a domestic pet" was intended to allow ownership of animals normally associated with residential, family living. See Becker v. Arnfield, 171 Colo. 256, 466 P.2d 479 (1970). Whereas two ponies may be in keeping with reasonably pleasant residential living, that would not necessarily be the case if the nature or number of the animals were different. We affirm the trial court's factual determination in this respect.

II. The Fence

The second issue on appeal concerns the correctness of the trial court's determination that King's fence made of wire and posts, erected around the entire property, was not a violation of Paragraph 2 of the deed restrictions, which reads in pertinent part:
No fences shall be allowed to be built in front of the back house line for any lot and all fences shall be of wood materials and shall not exceed four feet in height.
The trial court held, based upon testimony at trial, that the wire fence constructed by King was "temporary" in nature, intended to protect the property and innocent trespassers from injury during the construction process. Furthermore, the above section of Paragraph 2 was found to be vague and ambiguous when compared to paragraph 4, which reads:
4. Each residence shall have attached thereto a walled service court or fenced utility area, using materials and with height and design in such a manner that the structures and objects located therein shall present, from the outside of such utility yard, a broken and obscured view to the height of such wall or fence. The following buildings, structures and objects may be erected and maintained and allowed to remain on the building plot only if the same are located wholly within the main residence or wholly within a utility yard: Pens, yards and houses for pets, above-ground storage of construction materials, wood, coal, oil and other fuels, clothes racks and clotheslines, shops and workshops, servant's quarters, garbage and trash receptacles (other than underground receptacles), and above-ground exterior air-conditioning and heating equipment and other mechanical equipment and any other structures of objects determined by the Developer to be of an unsightly nature of appearance.
James contends that the deed restrictions only allow one type of fence, whether temporary or permanent, and that the purpose of this deviant fence on King's lot was not to protect property and persons during construction, but was simply for the benefit of the ponies. James further suggests that the two provisions cited by the trial court as conflicting are in fact complementary. King argues that the temporary injunction obtained by James prevented placement of a proper fence on Lot 4 and that the deed restrictions as to fences are vague and ambiguous.
We agree with James that Paragraph 2 of the deed restrictions relating to fencing is clear and complements Paragraph 4. Paragraph 4 calls for either a walled service court or a fenced utility area. If it is a fence, then Paragraph 2 would be followed. If it is a walled service court it is not a fence, and thus could be higher than four feet and made of similar exterior as to that of the main residence. King's argument that the temporary injunction in some way excused compliance with the restrictive covenants is without merit. King was on actual notice of the required fence materials as well as the fact that no fence could go around the entire property. Further, the deed restrictions do not provide for "temporary" fences.
Inasmuch as there is no substantial ambiguity here and no provision allowing for "temporary" fences, the decision of the trial court was clearly against the weight of the evidence on this point. The trial court should have ordered the removal of all wire fences and required that any fence behind the back house line be of wood materials.

*1078 III. The Barn and Developer Approval

James urges that Paragraph 2 of the deed restrictions clearly prohibits construction of any buildings (other than a well house) prior to the main building and specifically excludes separate detached guest houses and garages. Smith's metal barn to stable horses violated both provisions of Paragraph 2. James argues that the metal barn further violates Paragraph 2 because it was constructed without prior written approval of Lake Nally Woods Homeowners Association, Inc. as the successor of the original developer.
The trial court found that King violated the deed restriction by constructing the barn out of metal, but did not address the fact that it was a separate structure built prior to the residence. The court found that the architectural control committee of the Homeowners Association, as the successor of the developer, had no clear authority to inspect and approve construction plans in the absence of the developer.
We need not address the issue of the authority of the committee to review proposed plans in order to dispose of the instant issue on appeal.[1] That is so because it is clear, beyond reasonable dispute, that the barn was in violation of the restrictive covenant in three respects: it was detached, it was built prior to the residence, and it was of metal material. If only the latter violation were at issue, then perhaps the trial court's remedy of a wood or stucco covering would suffice. In view of the three violations, however, it was an abuse of discretion not to grant James injunctive relief. At this point in time, the trial court should consider the extant facts relating to the material and location of the barn and either order its removal or its remodeling and/or relocation so that it may be deemed an integral part of the main residence and not a separate metal structure, thereby conforming to the restrictive covenant.

IV. The Travel Trailer

The trial court declined to order the removal from Lot 4 of a travel trailer, which was used to house King's security guard and caretaker, who takes care of King's ponies. The deed restrictions are clear in this respect:
No structures of a temporary character, such as a trailer, basement, tent, shed, shack, garage, barn or other out-building shall be used on any lot at any time as a residence, either temporarily or permanently.
Once again, the trial court erred in refusing to enforce this covenant. It should have ordered the removal of the trailer.

V. Attorney Fees

We find that James has not properly preserved this issue for appeal. Although he now asserts the right to attorney fees pursuant to provisions of the restrictive covenant, there was no pleading or proof in this regard presented to the trial court. The only attorney fees request below was predicated upon section 57.105, Florida Statutes (1987), and we decline to reverse the trial court's denial of fees on that basis.

Conclusion
In conclusion, we affirm the trial court's determination in regard to the ponies; we hold that the trial court erroneously denied the appellants (James) injunctive relief in regard to the removal of the wire fence and the trailer, and in regard to conforming the metal barn with the restrictive covenant. We affirm the lower court's declination to award attorney fees pursuant to section 57.105, Florida Statutes (1987).
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent herewith.
SHARP, C.J., and DANIEL, J., concur.
NOTES
[1] We would note, however, under our reading of the covenant, the argument is compelling that the incorporated homeowners association, which the developer corporation was obligated to form, is the latter's successor.