554 So.2d 1179 (1989)
PELICAN ISLAND PROPERTY OWNERS ASSOCIATION, INC., a Florida Corporation, Not for Profit, Appellant,
v.
James MURPHY and Yvonne Murphy, Appellees.
No. 88-03488.
District Court of Appeal of Florida, Second District.
November 17, 1989.
Rehearing Denied January 8, 1990.
Michael A. Steinberg, Tampa, for appellant.
Lorraine B. Gregg of Eddy & Gregg, P.A., Tampa, for appellees.
RYDER, Acting Chief Judge.
Pelican Island Property Owners Association, Inc. challenges a final judgment in which the trial court dismissed its complaint for mandatory injunction against appellees James and Yvonne Murphy. We reverse.
*1180 Appellant, Pelican Island Property Owners Association, Inc. (the Association), a nonprofit property owners association, filed a complaint against appellees James and Yvonne Murphy, owners of property in the Pelican Island subdivision. The complaint alleged that the Murphys were subject to and had violated certain deed restrictions concerning construction of structures on property within the subdivision.
The Association's complaint specifically alleged that the Murphys had constructed an aluminum carport without the approval of the Association's architectural committee and that the Association would sustain irreparable injury because the carport detracted from the purpose of the deed restrictions. The portions of the deed restrictions which are pertinent to this appeal are contained in paragraphs 15 and 32.
Paragraph 15 provides, in part:
Exterior walls, houses, garages and all outbuildings must be of a masonry material covered with stucco and painted and may not be of frame, asbestos or composition materials unless in a gable or a minor portion of a wall under porch roof cover extending at least four (4) feet from the wall.
Paragraph 32 provides, in part:
All houses and all outbuildings such as garages, utility rooms, swimming pools, screen enclosures, bath houses, etc., or additions thereto must be built to plans which have the written approval of the BONDED INVESTMENT & REALTY COMPANY prior to commencement of construction, and which meet all requirements contained in these restrictions. The BONDED INVESTMENT & REALTY COMPANY may, in its discretion, and solely on the basis of its aesthetic standards for Pelican Island Unit 2, withhold approval of a plan which otherwise meets all of the requirements contained in these restrictions... . [A]ll such plans shall be properly drawn and shall contain specific details of all features ... and shall be submitted to the BONDED INVESTMENT & REALTY COMPANY prior to commencement of construction. Architectural control and rights of architectural or structural approval ... shall be exercisable and enforceable by, and shall become the right and responsibility of the Pelican Island Property Owners Association if at any time the BONDED INVESTMENT & REALTY COMPANY, or its assigns own less than three (3) lots in Pelican Island Subdivision ... the BONDED INVESTMENT & REALTY COMPANY may assign said architectural control and said rights to the Pelican Island Property Owners Association, Inc. at any earlier time it desires... .
The Murphys' answer and affirmative defenses alleged, in part, that the Association was estopped to assert that the carport was constructed without approval and, therefore, in violation of the deed restrictions. The Murphys asserted that the estoppel arose because of a letter James Murphy sent to the Association and the realty company on March 15, 1986.
In the letter, Murphy stated he wanted to build a carport "designed and built of equal construction to his house", and that his immediate neighbor had approved of his plan. However, before hiring an architect he wanted "preliminary approval" from the Association and the realty company. Murphy acknowledged that such approval would be "subject to the quality of my final drawings [and] specifications." There is no evidence in the record to indicate that the Murphys at any time submitted "properly drawn" plans containing the specific details of all features of the carport as required by paragraph 32 of the deed restrictions.
Neither the Association nor the realty company responded to Murphy's March 15, 1986 letter. At a later date, the Murphys mailed another copy of the letter to the Association and the realty company, but still did not receive a response. Murphy testified that he also attempted to communicate with the realty company by phone several times, but his phone calls were never returned. He then contacted his adjacent neighbors, who did not object to the carport.
This sparse record does not contain any other information concerning Murphy's attempts to contact the realty company and *1181 the Association to obtain written approval to construct the carport. However, the record does contain a "Proposal and Contract" from Anderson Aluminum, Inc., for the construction of a carport at the Murphys' property. The proposal was submitted to James Murphy on January 12, 1988, and Murphy accepted the proposal and signed the contract on that same date. We note that this date is almost two years after Murphy's initial attempt to contact the Association and the realty company to obtain approval for construction of the carport.
On March 1, 1988, appellant's board of directors concluded that the Murphys were in direct violation of the deed restrictions because they had not obtained written approval to construct the carport. The Association promptly filed its complaint on April 7, 1988. After a hearing, the trial court issued a final judgment which denied the Association's request for mandatory injunction.
We recognize that restrictive covenants are not favored in law. Nevertheless, restrictive covenants will be enforced "when the restriction applies to the location of buildings to be erected on the land, and such restrictions are carried in all deeds with a view to preserve the symmetry, beauty, and general good of all interested in the scheme of development." Stephl v. Moore, 94 Fla. 313, 114 So. 455 (Fla. 1927). Under the facts of this case, we disagree that the Association waived its rights to enforce the deed restrictions and is, therefore, estopped from obtaining a mandatory injunction to force the Murphys to remove the carport.
The doctrine of estoppel should be applied with great caution and is applied only where to refuse its application would be virtually to sanction a fraud. Brickell Bay Club Condominium Association, Inc. v. Hernstadt, 512 So.2d 994, 996 (Fla. 3d DCA 1987), review denied, 520 So.2d 584 (Fla. 1988); Capital Bank v. Schuler, 421 So.2d 633, 638 (Fla. 3d DCA 1982). Furthermore, estoppel will not lie unless the party seeking to assert it is misled. Id. Estoppel based upon silence cannot exist where the parties have equal knowledge of the facts or the same means of ascertaining that knowledge. Overstreet v. Bishop, 343 So.2d 958, 960 (Fla. 1st DCA 1977); Ennis v. Warm Mineral Springs, Inc., 203 So.2d 514, 520 (Fla. 2d DCA 1967), cert. denied, 210 So.2d 870 (Fla. 1968). In this case, the Murphys knew they had to obtain permission and provide drawings to obtain approval.
Estoppel rests on the premise that the party asserting the estoppel has acted in reliance upon the prior inconsistent conduct. The essence of estoppel is that a person should not be permitted to unfairly assert inconsistent positions. Head v. Lane, 495 So.2d 821, 824 (Fla. 4th DCA 1986); Capital, 421 So.2d at 638. There is no evidence that the failure of the property owner's association to respond to the Murphys' preliminary inquiries reasonably led them to conclude that they did not have to provide written plans and obtain written permission to construct their carport.
Significantly, there is no record evidence that the Murphys' preconstruction request for approval complied with paragraph 32 of the deed restrictions, which clearly requires the submission of specifically drawn construction plans. Therefore, there were no written architectural plans for the Association or the realty company to approve. Rather, Murphy's March 15, 1986 letter clearly implies that final drawings and specifications would be forthcoming after Murphy obtained "preliminary approval". At that time, the Murphys intended to provide drawings and specifications at a later date, but there is no evidence that they did so.
Although there was some evidence that the Murphys attempted to obtain telephone permission at unspecified later dates, this does not fulfill the requirement of obtaining written approval before beginning construction. The structure that the Murphys finally built in early 1988 was totally different from that required by the deed restrictions and was not of equal construction to the Murphys' house.
There is no evidence in the record to support a finding that the Association *1182 waived its right to enforce the deed restrictions or should be estopped from doing so. The Murphys did not comply with the basic requirements of obtaining written approval, which was their obligation before beginning construction. Cf. Brickell Bay, 512 So.2d at 994 (Florida courts refuse to apply estoppel principles to permit alterations of condominium property without written permission of the association as required by the Declaration of Condominium). In Fountains of Palm Beach Condominium, Inc. No. 5 v. Farkas, 355 So.2d 163 (Fla. 4th DCA 1978), the failure of the condominium association to object to the unit owner's intent to alter property did not operate as an estoppel or waiver. In Fountains, the unit owner's numerous attempts to obtain permission prior to construction were futile. The court held that the owner's intentions did not operate as an estoppel or waiver of the association's right to injunctive relief. Id. at 164.
In this case, the Murphys' attempts to obtain preliminary approval cannot operate as an estoppel of the association's right to injunctive relief. The deed restrictions clearly required the Murphys to submit drawings and specifications of their proposed carport as a prerequisite to the association's granting written approval of the plans before construction. The Murphys were aware of this requirement before they started construction of their carport, as evidenced by the fact that they repeatedly attempted to obtain approval. Under Florida law, no estoppel by silence can arise unless the party asserting the estoppel claim is ignorant of the truth. Brickell Bay, 512 So.2d at 997; Ennis, 203 So.2d at 520. There simply are no factors present which justify the application of waiver or estoppel principles.
This case is unlike Plaza del Prado Condominium Association, Inc. v. Richman, 345 So.2d 851 (Fla. 3d DCA 1977), in which a condominium association approved nonconforming changes from time to time, and over one year had elapsed before the association notified the owners they were in violation of the condominium declaration. Under those facts, the trial court's application of estoppel was proper. However, in this case the Murphys constructed their carport sometime after January 12, 1988, and the Association promptly declared they were in direct violation of the deed restrictions at a March 1, 1988 board of directors meeting.
Although the Murphys argued that they obtained approval from adjacent neighbors, the property owners association does not have the discretion to grant waivers from deed restriction. All property owners within the subdivision have agreed to be bound by the same restrictions and have a right and interest in upholding those restrictions. "The benefit of ... restrictive covenants inures to each purchaser, irrespective of the time of purchase." Stephl, 114 So. at 455.
But for their waiver and estoppel argument, the Murphys have not disputed that their aluminum carport violates the Pelican Island Subdivision deed restrictions. Their March 15, 1986 letter stated that the carport would be designed and built of equal construction to the Murphys' house, which an aluminum carport clearly is not. The Murphys' aluminum carport is in breach of the recorded deed restrictions. Where structures have been erected in breach of a restrictive covenant, the court may order their removal, especially where it was erected with full knowledge of the restriction and in violation of a plaintiff's rights. Daniel v. May, 143 So.2d 536, 538 (Fla. 2d DCA 1962). Under the facts of this case, the trial court erroneously denied the Association's claim for injunctive relief. Cf. James v. Smith, 537 So.2d 1074, 1078 (Fla. 5th DCA 1989) (trial court should have ordered removal of fence and trailer). We therefore reverse and remand to the trial court with instructions to enter an order granting the mandatory injunction sought by the Association.
Reversed and remanded with instructions.
HALL and ALTENBERND, JJ., concur.