560 So.2d 1208 (1990)
The GREEN COMPANIES, INC., of Florida, Appellant,
v.
KENDALL RACQUETBALL INVESTMENTS, LTD., American Racquetball Corp., and Scandinavian Health & Fitness Centers, Inc., Appellees.
No. 89-804.
District Court of Appeal of Florida, Third District.
March 13, 1990.
Rehearing Denied June 4, 1990.
Kelly, Black, Black, Byrne, Craig & Beasley and Robert C. Byrne, Miami, and John G. Fletcher, South Miami, for appellant.
Kluger, Peretz, Kaplan & Berlin, Alan J. Kluger and Amy N. Dean, and Aronovitz & Jacobs, Miami, for appellees.
Before SCHWARTZ, C.J., and BASKIN and COPE, JJ.
PER CURIAM.
The Green Companies, Inc., of Florida ("Green"), plaintiff below, appeals an adverse final judgment after a bench trial on claims for specific performance of a contract, injunctive relief, and abatement of a nuisance. We reverse.
*1209 Green is the developer of a commercial and office center known as Dadeland West, located in unincorporated Dade County, Florida. The tract has been divided into nine separate parcels, most of which are owned, and have been developed, by Green. Kendall Racquetball Investments, Ltd. is a Florida limited partnership which owns lot 4, on which it has built a health club.[1] Appellee Scandinavian Health & Fitness Centers, Inc. is the current tenant of Kendall Racquetball, and is doing business on the premises as Scandinavian Kendall Racquet Club.
At the outset of development, Dadeland West was subjected to a Declaration of Reciprocal Parking and Easement Agreement (Easement Agreement), which was in force at the time Kendall Racquetball acquired lot 4 in 1977. In 1978 the Easement Agreement was amended and has continued in force to the present time. The lawsuit below, and present appeal, involve an interpretation of that agreement.
The Easement Agreement provided that each lot owner, as well as their tenants and customers, would have rights of ingress and egress over all of the interior roads within Dadeland West. With respect to parking, the agreement required that each lot owner would provide parking spaces for the use of customers, tenants and employees, but also provided, in substance, that customers, licensees, and invitees would be able to park in any available parking space anywhere at Dadeland West.
The present dispute centers on the extent of Kendall's obligation[2] to provide parking spaces for the use of its customers. Paragraph 4D of the Easement Agreement provides in part:
The Developer has had prepared a Master Site Plan (The plan)... . The parties agree that not without the prior written consent of all signatories hereto, future owners of any portion of the Park, their successors and assigns, no changes or alterations shall be made to the Plan or in the Park which differ or vary from the Plan (although in other aspects the Plan may be amended) as to ... (iv) any change in the ratio of parking spaces as shown on the Plan per building square footage as shown on the Plan.... The Common Areas in the Plan may be changed ... from time to time, ... (written consent always required in (i) through (vi) above) it being the intention of the parties that the easements herein granted shall be easements to use the Common Areas of the Park as such exists from time to time. However, each owner of property at the Park shall comply with all applicable zoning and similar laws, rules and regulations in connection with the number of parking spaces on their portion of the Park, and the parking spaces and facilities on the property of other owners at the Park shall not be counted in determining the number of spaces that each owner must provide. It is the intention of the parties that each owner of any portion of the Park will provide a sufficient number of parking spaces on his property in relation to the intended usage of such property and the requirements of law without relying upon parking facilities located elsewhere at the Park.

(Emphasis added).
In 1984 Kendall undertook interior renovations which had the effect of increasing the square footage of its building by approximately 4,000 square feet.[3] It is undisputed that Kendall did not obtain the written consent which was required by clause 4D(iv) of the Easement Agreement.[4]
Subsequent to the completion of renovations, Kendall's health club business increased steadily. Green attempted to negotiate with Kendall about the need for *1210 additional parking, arguing that Kendall's provisions for parking were inadequate under the agreement, and that the peak usage by Kendall customers infringed on the parking areas of other tenants. Kendall contended that any parking difficulties at Dadeland West were attributable to Green's continuing development of the site and could not be blamed on Kendall.
In 1987 Green brought suit against Kendall, relying on a provision of the Easement Agreement which provides that any owner "shall have the right to bring an action for specific performance to enforce the terms and provisions of this Declaration ... including without limitation, the right of specific performance, preliminary and permanent injunctions, and the recovery of damages, including legal fees, appellate legal fees and costs... ." In substance Green sought specific performance to require Kendall to provide additional parking; injunctive relief to restrain Kendall from using more than its parking allotment; and damages.[5] Green contended that it was entitled to damages for loss of tenants whose leases could not be renewed, or who could not be accepted as tenants in the first instance, because of a shortage of parking space.
The trial court severed the damage count and conducted a bench trial on Green's claims for specific performance and injunctive relief. The trial court found that Kendall had provided a sufficient number of parking spaces on lot 4 in relation to its intended usage and the requirements of law without relying on parking facilities located elsewhere at the Park. The trial court reasoned that the question of the adequacy of parking spaces cannot be judged based on the success or failure of the business venture carried on by the owner of a particular parcel. In substance the trial court concluded that the unusually heavy demand for parking spaces by Kendall customers was attributable to Kendall's very substantial business success, and that such business success did not in and of itself signify that Kendall had acted unreasonably in initially determining its own parking allocations. The court also found that Green did not produce sufficient evidence to establish by a preponderance that the parking problem "if one exists at all, is caused solely by the Defendants [Kendall]." As a corollary, the court concluded that Kendall had not created a nuisance, but instead had only exercised its rights under the Easement Agreement, and that Green was entitled neither to injunctive relief nor damages.
After review of the contract and the record herein, we have concluded that the judgment must be reversed. First, clause 4D(iv) of the Easement Agreement clearly required Kendall to procure written consent of the other owners for any change in the ratio of parking spaces per building square footage. Kendall's 1984 renovation added some 4,000 additional square feet to the building, which necessarily changed the parking space ratio. Kendall did not procure the prior written consent of the other owners to that change, as the contract required.
Second, paragraph 4D of the Easement Agreement provided, "It is the intention of the parties that each owner of any portion of the Park will provide a sufficient number of parking spaces on his property in relation to the intended usage of such property and the requirements of law without relying upon parking facilities located elsewhere at the Park."[6] It is fundamental that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1981); see Sharp v. Williams, 141 Fla. 1, 9, 192 So. 476, 480 (1939) (contract contains "implied promise ... to give the necessary cooperation"); Brickell Bay Club Condominium Ass'n, Inc. v. Hernstadt, 512 So.2d 994, 997 (Fla. 3d DCA 1987), review denied, 520 So.2d 584 (Fla. 1988). Here, the contractual language required Kendall to make a reasonable, good faith estimate of the need for parking spaces based on the intended usage of the facility, that is, the *1211 activities intended to be carried on therein. Thus, Kendall was obliged to make a good-faith reassessment of its parking needs (a) when it expanded the square footage of its facility, and (b) periodically as it became reasonably apparent that the parking area actually being used by Kendall regularly exceeded the parking area Kendall was providing.
Kendall contends that the phrase "intended usage of such property" refers to use in a generic sense. Kendall argues that "intended usage" is a term of art drawn from the Dade County Zoning Code. Under that analysis, Kendall maintains that the intended usage has at all times been that of a health club, and since that "use" has not changed, it follows that there has been no need to reassess the number of parking spaces in light of the 1984 renovations. In reality, the cited phrase is not used in this context in the Dade County Zoning Code. More important, such an interpretation would be at odds with the plain language of the final sentence of the contract, which indicates an intention that each owner provide an ample number of parking spaces "without relying upon parking facilities located elsewhere at the park." Kendall's peak daily usage of parking spaces is significantly higher than the number of spaces Kendall itself is providing. We conclude that Kendall has breached its contractual obligations.[7] We therefore reverse the final judgment and remand for further proceedings consistent herewith.[8]
Reversed and remanded.
NOTES
[1] Appellee American Racquetball Corporation is a general partner of Kendall Racquetball Investments, Ltd.
[2] We will refer to the appellees collectively as "Kendall."
[3] This was accomplished by removing eleven racquetball courts, each of which was two stories tall, and replacing them with two floors of activity space.
[4] During the time period of the renovations, the health club tenant merged into the current tenant, appellee Scandinavian.
[5] Green also asserted that Kendall's parking practices constituted a nuisance.
[6] Green placed principal reliance on this portion of paragraph 4D.
[7] In view of these conclusions we need not reach Green's contentions regarding zoning requirements. We note, however, that "the requirements of law" as used in paragraph 4D is a contractual term. Kendall's procedural and substantive compliance with the requirements of law at the time of the 1984 renovation was a proper area of inquiry, and Green's proffered evidence should have been admitted.
[8] As this is a proceeding in equity, the question of fashioning relief is addressed to the sound discretion of the trial court.