Steven A. SCHECK, Plaintiff,

v.

**BURGER KING CORPORATION, Defendant.**

**No. 89–1281–Civ.**

United States District Court, S.D. Florida.

Jan. 15, 1991.

Ronald P. Weil, Miami, Fla., for plaintiff.

Holland & Knight, Mary Steinberg, D. Joan Lawrence, James M. Grippendo, Miami, Fla., and Douglas G. Moxham, Boston, Mass., co-counsel, for defendant.

## MEMORANDUM and ORDER

HOEVELER, District Judge.

THIS CAUSE is before the court upon the motion of Defendant, BURGER KING CORPORATION ("Burger King"), for summary judgment on all counts of the Complaint brought by Plaintiff, STEVEN A. SCHECK ("SCHECK"). Plaintiff Scheck has brought suit against Burger King alleging that Burger King breached an implied non-competition agreement (Count I), an implied covenant of good faith and fair dealing (Count II); an implied contract created by promissory estoppel (Count III), and the Massachusetts Consumer Protection Act which Scheck alleges incorporates the above claims (Count IV). Defendant Burger King moves this court for summary judgment on the basis that Plaintiff's claims are either insufficient as a matter of law, are barred by the statute of frauds, or have been released by Plaintiff Scheck as a result of two releases executed by Scheck in 1985 and 1986.

## I. FACTUAL BACKGROUND

On February 6, 1989 Plaintiff Scheck filed the present four-count Complaint against Burger King in the United States District Court for the District of Massachusetts. In the Complaint, Plaintiff has stated that he suffered compensable damages caused by Burger King's decision to sanction the Marriott Corporation's conversion of a Howard Johnson restaurant to a Burger King franchise two miles away from Scheck's franchise in Lee, Massachusetts. Burger King responded by filing a motion to dismiss and/or transfer the case pursuant to 28 U.S.C. § 1404 claiming that the forum selection provision of the Assignment Agreement requires the suit to be litigated in the U.S. District Court for the Southern District of Florida. In an order dated June 15, 1989, Judge Frank H. Freedman, Chief U.S. District Judge for the District of Massachusetts, denied Burger King's motion to dismiss, but ordered that, in the interest of justice, the case be transferred to this court pursuant to 28 U.S.C. § 1404.

## II. JURISDICTION AND VENUE

Jurisdiction is based upon 28 U.S.C. § 1332, there being complete diversity between the parties and an amount in controversy in excess of $50,000. Venue is based upon 28 U.S.C. § 1391(a).

## III. GOVERNING LAW

The parties' agreement provides that Florida law will govern all suits to protect or secure rights sought to be enforced under the Franchise Agreement. Plaintiff Scheck argues that the dispute should be governed by Massachusetts law because "most of the transactions between Scheck and Burger King have taken place in Massachusetts." Further, Plaintiff argues that the issues raised in his Complaint do not involve rights under the Franchise Agreement and therefore are not subject to the choice of law provision in the Agreement. Plaintiff states that his four-count Complaint does not seek to "protect or secure" rights under the Franchise Agreement, but rather seeks to enforce rights created independent of the Agreement.

In transferring this action to the Southern District of Florida, the U.S. District Court for the District of Massachusetts has previously rejected this same argument as regards the forum selection clause. Chief U.S. District Judge Freedman ruled that no matter how Plaintiff chooses to character-

ize his claims against Burger King, in absence of the Franchise Agreement, Plaintiff would have no rights upon which to base a claim against Burger King. This court agrees with the Massachusetts court's reasoning and finds that Plaintiff's claims do arise under the Franchise Agreement. The issue then becomes the proper conflict of laws rule and the legitimacy of the choice of law clause provided for in the Franchise Agreement.

 In cases in which jurisdiction depends upon diversity of citizenship, Federal courts must follow conflict of laws rules prevailing in the states in which they sit. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In other words, the forum court applies its own conflict of laws rule respecting a contract to make an initial determination of the law to be applied to the dispute. In an action transferred pursuant to 28 U.S.C. § 1404, the forum state is the state where the action was originally filed. *Van Dusen v. Barrack*, 376 U.S. 612, 639–640, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964). Under the law of Massachusetts, the state where the instant cause was originally filed, choice of law

clauses and forum selection clauses are prima facie valid and will be upheld unless a resisting party can present "evidence of fraud, undue influence, [or] overweening bargaining power." *Fireman's Fund Amer. Ins. Cos. v. Puerto Rican Forwarding Co., Inc.*, 492 F.2d 1294, 1297 (1st Cir.1974). In this case, the parties expressly and unambiguously selected the law of Florida to govern their agreement.[1] Absent any evidence of fraud or unequal bargaining power, which this court fails to find,[2] the parties' intention to be governed by Florida law should be honored.

## IV. EFFECT OF 1985 and 1986 RELEASES

Defendant Burger King initially argues that Plaintiff Scheck's entire array of claims have been released by way of an "Agreement of Cancellation and Termination of Lease and General Release" executed by Scheck and Burger King on November 20, 1985.[3] ("1985 Release"). Burger King further argues that it was again released by Scheck on May 27, 1986 in connection with Scheck's purchase of his partner Ralph Marvin's interest in the franchise.[4] ("1986 Release"). Burger King

---

1. The 1981 Franchise Agreement provides as follows:

 18. MISCELLANEOUS: GENERAL CONDITIONS
 C. Governing Law
 (1) This Agreement shall become valid when executed and accepted by [Burger King] at Miami, Florida; *it shall be deemed made and entered into in the State of Florida and shall be governed and construed under and in accordance with the laws of the State of Florida....* (Emphasis provided).

2. The Massachusetts District Court, in finding that Plaintiff had knowingly and fairly agreed to the choice of forum provision found Scheck to be an experienced businessman who currently owns four Burger King franchises and who, consequently, has dealt with the Defendant over a significant period of time. *See* Docket Entry # 1 at 4.

3. The document, signed at the closing of Scheck's outright purchase from Burger King of the previously leased Lee site [Scheck Dep. 2–19 to 2–24], states in pertinent part:

 [I]n further consideration of the execution of this Agreement, M & S [Associates], Scheck and [Burger King Corporation] mutually release one another ... of and from any and all

claims whatsoever in law or in equity, which it may have, now has or may have by reason of any matter, cause or thing whatsoever arising out of or in connection with the Lease, the relationship between [Burger King Corporation] and M & S [Associates] and Scheck as vendor and vendee of goods, or any other cause or circumstance.

4. The 1986 Release, contained in Paragraph 2 of the "Assignment and Assumption of Interest in Restaurant Franchise Agreement and Lease Agreement and Consent to Assignment" executed by Scheck, Marvin, and Burger King on May 27, 1986, reads in pertinent part as follows:

 [BURGER KING CORPORATION], ASSIGNOR and ASSIGNEE hereby mutually release each other ... of and from any and all claims whatsoever, in law or in equity, which they have or may have by reason of any matter, cause, or thing whatsoever arising out of or in connection with the Agreements, relationships, or a course of dealings between [BURGER KING] and ASSIGNOR and [BURGER KING] and ASSIGNEE as vendor and vendee of any goods, the operation of the Restaurant, or for any other cause or circumstance with existed prior to the date of this Agreement ...

contends that since Scheck was aware of the dispute concerning the conversion of the Howard Johnson's on the Massachusetts Turnpike before he signed the releases, all of Plaintiff Scheck's claims against Burger King are barred by the 1985 and 1986 Releases.

■ Under Florida law, a general release "will ordinarily be regarded as embracing all claims or demands which had matured at the time of its execution." *Sottile v. Gaines Construction Co.*, 281 So.2d 558, 561 (Fla.App.1973), *cert. denied*, 289 So.2d 737 (Fla.1974). Conversely, a general release cannot be held to bar a claim which did not exist when it was signed. *Id.; Ciliberti v. Ciliberti*, 416 So.2d 48, 49 (Fla. App.1982).[5]

■ At the time the releases were executed, Scheck had no encroachment claim against Burger King. While Scheck may have been aware of a possible conversion of the Howard Johnson's in late 1985, a claim could not arise until Burger King actually permitted the Marriott Corporation to open the new Lee, Massachusetts Turnpike Burger King franchise, or at the least, until Burger King signed an agreement with Marriott indicating the parties' mutual intentions to open the new franchise at the Lee location. This was not the case, however. The site selection decision was in doubt as late as February 1987,[6] and the franchise agreement between Burger King and Marriott was not signed until June 30, 1987.[7] Any attempt on Scheck's part even to enjoin Burger King prior to May 1986 would have resulted in a dismissal as not yet ripe. Since the releases are limited to claims which existed at the time of their execution, Plaintiff Scheck's claims are not barred by the 1985 and 1986 Releases, and Defendant's motion for summary judgment under such a theory is DENIED.

## V. STATUTE OF FRAUDS DEFENSE

■ Defendant Burger King raises the Statute of Frauds as a defense to all of Scheck's claims, asserting that the Plaintiff's claims rely on an exclusive territory agreement which, contrary to statutory requirements, is unwritten and is not susceptible of performance, nor intended to be performed, in less than one year. *See* Fla. Stat. § 725.01 (1988). Plaintiff Scheck aptly demonstrates, however, that he has not asserted breach of an oral exclusive territory agreement, nor has he claimed entitlement to an exclusive territory.[8] Rather, Scheck claims a breach of duties implied in the Franchise Agreement itself. Just as Scheck's several claims cannot be found to exist independent of the Franchise Agreement and therefore are subject to its choice of law and choice of forum provisions, so too are those claims so enmeshed with the implication of the Franchise Agreement as to preclude a finding of an "independent contract" governing territorial exclusivity.[9] Defendant's motion for summary judgment

---

**5.** Though Defendant stridently argues that general releases can serve to waive claims arising after execution of the release when those claims spring from pre-release promises and obligations, it offers no support in Florida law for such a broad proposition. Its reliance on *Coral Gables Imported Motorcars, Inc. v. Fiat Motors of North America, Inc.*, 673 F.2d 1234 (11th Cir.1982) is misplaced. There the court found that the plaintiff's fraud claims under an initial franchise agreement had matured and were compensable at the time plaintiff entered into a general release executed in conjunction with a subsequent franchise agreement. *Id.* at 1239.

If Burger King's arguments were valid, by virtue of these clauses Scheck would be prohibited from ever suing Burger King on any claim pertaining to the underlying Franchise Agreement. Because the releases are mutual, presumably Burger King would likewise be unable to pursue any claims against Scheck, and the parties would be free to run rampant over each other's interests. No special circumstances suggest themselves here which would support the wisdom of enforcing an agreement to render an ongoing contract unenforceable—and this court would likely regard such an arrangement as contrary to public policy.

**6.** Olcott Deposition, Exhibit # 8.

**7.** Brooks Affidavit, Exhibit # 33.

**8.** Plaintiff's Memorandum In Opposition To Defendant Burger King Corporation's Motion for Summary Judgment, p. 33.

**9.** As to Scheck's claim that Burger King made an independent promise not to permit the opening of the Massachusetts Turnpike Burger King, see Section VIII., *infra*.

as it pertains to a Statute of Frauds defense is, therefore, DENIED.

## VI. COUNT I: IMPLIED NON–COMPETITION AGREEMENT

▇ Plaintiff Scheck alleges that when he purchased the Lee site from Burger King it came with an implied promise of non-competition generally, and specifically, a promise not to establish a franchise at the Howard Johnson location. The law of Florida prohibits express or implied contracts which restrain trade but allows for an exception where the good will of a business—the value of the business's reputation in the community—is part of a sale. Fla.Stat. § 542.33(2)(a) (1989). Defendant Burger King argues that summary judgment must be entered in its favor under Count I of the Complaint because there was no sale of a business or good will—only the Lee real estate from which one may not imply a covenant of non-competition. Burger King's argument is well founded. Indeed, the document from which Scheck contends he obtained some portion of good will is entitled a "Contract for Sale of Real Estate" and states only that Scheck "agrees to buy that certain piece of real property together with the building and improvements located thereon...." Moreover, it must be conceded that if Burger King owned any portion of the franchise's goodwill, it was by virtue of the Franchise Agreement's license of the Burger King trademark to Scheck and not contingent on owning the land and buildings on which the franchise sat. Burger King's interests in the franchise, that is, its monthly royalties and fees, its reversionary interest, its expectation that the franchisee not act to sully or dilute the Burger King trademark, were not affected in any way by the sale and transfer of the underlying property.

For his part, Plaintiff Scheck claims that the real estate's non-negotiable selling price of $691,000 reflected the value of the premises as a Burger King franchise, and not simply as a piece of commercial real estate. Yet, even if Scheck could show the Lee property cost more than comparable surrounding commercial real estate, that alone would not suffice to avoid summary judgment. The Lee site would likely be more valuable to him than to a non-Burger King franchisee precisely because it came complete with a functioning Burger King restaurant.[10] Valuable and desireable buildings, however, are not the equivalent of good will.

▇ Scheck, moreover, has not presented any evidence to support what is otherwise merely a bald assertion. He has not shown, for example, that comparable commercial real estate near his franchise site in Lee sold for much less than $691,000 in 1986. It would be Scheck's burden at trial to establish the existence of an implied non-competition agreement. The Supreme Court has made it clear that summary judgment is mandated when, after adequate time for discovery, there is an absence of evidence to support a non-movant's case on issues for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Rather than merely alleging the existence of *some* factual dispute, the non-moving party must rebut any facts properly presented by way of affidavits or other evidence demonstrating the existence of a genuine and material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Accordingly, Defendant's motion for summary judgment as to Count I is GRANTED.

## VII. COUNT II: IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

▇ It is axiomatic that a contract includes not only its written provisions, but also the terms and matters which, though not actually expressed, are implied by law,

---

10. For the same reason, it should be noted, Defendant Burger King acquired a right of reacquisition in case of sale or transfer and not, as Plaintiff argues, to repurchase the "assets" of the business.

and these are as binding as the terms which are actually written or spoken. *Sharp v. Williams*, 141 Fla. 1, 192 So. 476, 480 (1939). One such implied term of a contract, recognized by Florida law, is the implied covenant of good faith and fair dealing. *Fernandez v. Vazquez*, 397 So.2d 1171, 1174 (Fla.App.1981) ("One established contract principle is that a party's good faith cooperation is an implied condition precedent to performance of a contract."); *Johnson v. Davis*, 480 So.2d 625 (Fla.1985) (seller of property has duty to disclose material defects of which she is aware in accord with principles of fair dealing and good faith).

In its motion for summary judgment, Defendant Burger King does not deny the existence of an implied covenant of good faith, but argues, rather, that acts explicitly authorized by the Franchise Agreement cannot constitute bad faith. Burger King relies heavily on the fact that the Franchise Agreement specifically declines to "grant or imply" to Scheck "any area, market or territorial rights".[11]

Yet this court declines to imply that so broad a right springs to Burger King from these words. The express denial of an exclusive territorial interest to Scheck does not necessarily imply a wholly different right to Burger King—the right to open other proximate franchises at will regardless of their effect on the Plaintiff's operations. It is clear that, while Scheck is not entitled to an exclusive territory, he is entitled to expect that Burger King will not act to destroy the right of the franchisee to enjoy the fruits of the contract. *See, e.g., Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 728 (7th Cir.1979). Burger King itself has developed specific policies and procedures to protect against the "cannibalization" and potential ruin of other Burger King franchises, and consequential weakening of the Burger King chain.[12] It is Burger King's alleged failure to exercise

such discretion with good faith and fair dealing, supported in large part by the allegation that the Defendant contravened its own policies to protect against the encroachment of other franchises, upon which Plaintiff Scheck bases his claim. Because issues remain regarding whether Burger King actually breached its covenant of good faith and fair dealing, a summary judgment cannot be granted. Defendant's motion for summary judgment as to Count II of the Complaint is DENIED.

## VIII. COUNT III: IMPLIED CONTRACT (PROMISSORY ESTOPPEL)

Plaintiff Scheck claims that an implied contract to not franchise Marriott's Massachusetts Turnpike site was formed by Burger King when, over drinks at a Burger King conference, Region Vice President Charles Olcott said to Scheck and eight to ten "Burger King VIP's" that "I can't believe that [Burger King President] Jeff Campell is ever going to allow [the Howard Johnson's conversion]."[13] In addition to claiming specific compensable damages from his detrimental reliance on this statement, Scheck seeks to estop Burger King from denying it agreed to forgo the Turnpike site.

The courts finds as a matter of law that no implied contract was created by Olcott's statement. Though Scheck may have actually relied on the statement, he relied on a supposition and not a promise. "A truthful statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built." *South Investment Corp. v. Norton*, 57 So.2d 1, 3 (Fla. 1952).

Furthermore, promissory estoppel "requires affirmative action indicative of a desire to be contractually bound", *Prudential Insurance Co. of America v. Clark*,

---

**11.** Franchise Agreement § 1.

**12.** "[A] Burger King site would not be approved for a franchisee where there would be an issue of large sales deterioration at a nearby existing Burger King, which would stem from the open-

ing of the new store in question" ... each site approval was made on a "case by case basis." [Olcott Dep. pp. 19–22].

**13.** Scheck Dep. I, pp. 149–53.

456 F.2d 932, 936 (5th Cir.1972); or in Scheck's own words, "a representation intended to induce a course of conduct on the part of the [promisee]", citing *Cellucci v. Sun Oil Co.*, 2 Mass.App. 722, 728, 320 N.E.2d 919 (1974) *aff'd*, 368 Mass. 811, 331 N.E.2d 813 (1975). There is nothing on the record which suggests that in making his statement to a number of different people under highly informal circumstances Olcott intended to enter into a contract or somehow to induce Scheck to do so. Accordingly, Defendant's motion for summary judgment as to Count III of the Complaint is GRANTED and that Count is hereby DISMISSED.

### IX. COUNT IV: MASSACHUSETTS CONSUMER PROTECTION ACT

In Count IV of the Complaint, Scheck asserts violations of Mass.Gen. Laws c. 93A, the Massachusetts Consumer Protection Act. For the reasons stated in Section III, *supra*, Florida law is the law governing this case. Consequently, the Massachusetts statute does not apply to the acts complained of by Plaintiff, and Defendant's motion for summary judgment as to Count IV of the Complaint is GRANTED and that Count is hereby DISMISSED.

### CONCLUSION

For the foregoing reasons, it is ORDERED and ADJUDGED that:

1) Florida law is the law governing this case;

2) Defendant's Affirmative Defenses of Release and Statute of Frauds are DENIED and DISMISSED;

3) Defendant's Motion for Summary Judgment as to the claim in Count I of an implied non-competition agreement is GRANTED and Count I is DISMISSED;

4) Defendant's Motion for Summary Judgment as to the claim in Count II of an implied covenant of good faith and fair dealing is DENIED;

5) Defendant's Motion for Summary Judgment as to the claim in Count III of an implied contract and assertion of promissory estoppel is GRANTED and Count III is DISMISSED;

6) Defendant's Motion for Summary Judgment as to the claim in Count IV of violations of the Massachusetts Consumer Protection Act is GRANTED and Count IV is DISMISSED.

DONE and ORDERED.