**Steven A. SCHECK, Plaintiff,**

v.

**BURGER KING CORPORATION, Defendant.**

**No. 89–1281–Civ.**

United States District Court, S.D. Florida.

July 6, 1992.

Robert Zarco, Zarco & Associates, P.A., Miami, Fla. and Douglas M. Brooks, Martland & Brooks, Boston, Mass., for plaintiff.

Douglas G. Moxham, Lane & Altman, Boston, Mass. and T. Joan Lawrence, Steel, Hector & Davis, Miami, Fla., for defendant.

## ORDER

HOEVELER, District Judge.

Pending before the Court is the Defendant's Motion to Reconsider Order Denying Summary Judgment.[1] For the reasons enunciated below, this Court is compelled to conclude that the instant motion is without merit, and as such, must be DENIED.[2]

In its reconsideration motion, Defendant Burger King Corporation asks this Court to reverse its earlier decision denying Burger King's Motion for Summary Judgment as to Count II of the Complaint (breach of the covenant of good faith and fair dealing).[3] In denying Burger King's Motion for Summary Judgment, this Court observed that:

It is axiomatic that a contract includes not only its written provisions, but also the terms and matters which, though not actually expressed, are implied by law, and these are as binding as the terms

1. The Court explored the factual background to this cause in *Scheck v. Burger King Corp.*, 756 F.Supp. 543, 545 (S.D.Fla.1991).

Plaintiff's Motion for Leave to File Supplemental Opposition to Burger King's Motion to Reconsider Order Denying Summary Judgment is hereby GRANTED.

2. That this Court can entertain a motion for reconsideration is clear. *See Johnson v. Bensalem*, 609 F.Supp. 1340, 1342 (E.D.Pa.1985). As to the purpose of such a motion, this Court has previously noted that a reconsideration motion serves to:

"correct manifest errors of law or fact or to present newly discovered evidence.... Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3rd Cir. 1985), *cert. denied*, 476 U.S. 1171 [106 S.Ct. 2895, 90 L.Ed.2d 982] (1986).

Also, a motion for reconsideration should not be used to reiterate arguments previously made or as a vehicle to present authorities available at the time of the first decision.... D.E. # 83, at 2 (quoting *Moog Inc. v. United States*, No. 90-215E, 1991 WL 255371, at *1, 1991 U.S.Dist. LEXIS 17348, at *2 (W.D.N.Y. Nov. 21, 1991)).

3. In the February 14, 1992 Order, this Court had occasion to discuss the standard of review by which a court must adjudicate a summary judgment motion. The Court therein noted as follows:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate only where there is no genuine issue as to any material fact, and where the moving party is entitled to judgment as a matter of law. A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)....

Specifically, the party who moves for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). In determining whether the movant has met this burden, the court must view the evidence and all permissible factual inferences in a light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).... The "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

It is not until the movant's initial "burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. To establish a genuine factual issue, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56. Rather than merely alleging the existence of some factual dispute, the non-moving party must rebut any facts properly presented by way of affidavits or other evidence demonstrating the existence of a genuine and material issue of fact for trial. *See Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. That is, if the non-moving party's evidence is "merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11 (citations omitted). D.E. # 83, at 3–5.

which are actually written or spoken.... One such implied term of a contract, recognized by Florida law, is the implied covenant of good faith and fair dealing....

In its motion for summary judgment, Defendant Burger King does not deny the existence of an implied covenant of good faith, but argues, rather, that acts explicitly authorized by the Franchise Agreement cannot constitute bad faith. Burger King relies heavily on the fact that the Franchise Agreement specifically declines to "grant or imply" to Scheck "any area, market or territorial rights".

Yet this court declines to imply that so broad a right springs to Burger King from these words. The express denial of an exclusive territorial interest to Scheck does not necessarily imply a wholly different right to Burger King—the right to open other proximate franchises at will regardless of their effect on the Plaintiff's operations. It is clear that, while Scheck is not entitled to an exclusive territory, he is entitled to expect that Burger King will not act to destroy the right of the franchisee to enjoy the fruits of the contract.... Because issues remain regarding whether Burger King actually breached its covenant of good faith and fair dealing, a summary judgment cannot be granted.

*Scheck v. Burger King Corp.*, 756 F.Supp. 543, 548–49 (S.D.Fla.1991) (citations and footnotes omitted).

After carefully considering the pertinent portions of the record, the relevant case law, and the arguments presented by counsel at the April hearing on this motion, the Court is unable to delineate any sound basis (either in law or policy) upon which to retreat from the above analysis. The Court is unequivocally convinced of the propriety of both the legal propositions articulated and the conclusions reached in the 1991 Order, and accordingly, finds unpersuasive Defendant's Motion to Reconsider.[4]

To begin with, the Court remains certain that Florida contract law recognizes the implied covenant of good faith and fair dealing. *See, e.g., First Nationwide Bank v. Florida Software Servs., Inc.,* 770 F.Supp. 1537, 1542 (M.D.Fla.1991); *East Bay Ltd. Partnership v. American General Life & Accident Ins. Co.,* 744 F.Supp. 1118, 1122 (M.D.Fla.1990), *aff'd without opinion,* 937 F.2d 619 (11th Cir.1991); *Green Cos., Inc. of Florida v. Kendall Racquetball Invs., Ltd.,* 560 So.2d 1208, 1210 (Fla.Dist.Ct.App.1990); *Harrison Land Dev. Inc. v. R and H Holding Co., Inc.,* 518 So.2d 353, 355 (Fla.Dist.Ct.App. 1987); *Brickell Bay Club Condominium Ass'n, Inc. v. Hernstadt,* 512 So.2d 994, 997 (Fla.Dist.Ct.App.1987), *review denied,* 520 So.2d 584 (Fla.1988); *Coira v. Florida Medical Ass'n, Inc.,* 429 So.2d 23, 23 (Fla. Dist.Ct.App.1983); *Bowers v. Medina,* 418 So.2d 1068, 1069 (Fla.Dist.Ct.App.1982).[5]

**4.** Although the reconsideration motion was filed in May of 1991, the Plaintiff, without moving for any extension of time whatsoever, did not file his response until September of 1991. Such a procedure is unacceptable and will simply not be countenanced by this Court in the future.

**5.** It has been observed that the implied covenant of good faith and fair dealing "imposes upon each party the duty to do nothing destructive of the other party's right to enjoy the fruits of the contract and to do everything that the contract presupposes they will do to accomplish its purpose." *Conoco Inc. v. Inman Oil Co., Inc.,* 774 F.2d 895, 908 (8th Cir.1985) (*citing Photovest Corp. v. Fotomat Corp.,* 606 F.2d 704, 728 (7th Cir.1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1278, 63 L.Ed.2d 601 (1980)).

For further discussions concerning the role of the implied covenant of good faith, see, e.g., *Tidmore Oil Co., Inc. v. BP Oil Co./Gulf Products*

*Div.,* 932 F.2d 1384, 1391 (11th Cir.) ("The covenant [of good faith] is designed to 'preserve the spirit of the contract rather than the form' and to protect the reasonable expectations of the parties.") (citation omitted) (applying Alabama law), *cert. denied,* — U.S. —, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991); *Hubbard Chevrolet Co. v. General Motors Corp.,* 873 F.2d 873, 876 (5th Cir.) ("Generally speaking, the implied covenant [of good faith] seeks to protect the contracting parties' reasonable expectations.") (citations omitted) (applying Michigan law), *reh'g denied, en banc,* 878 F.2d 1435 (5th Cir.), *cert. denied,* 493 U.S. 978, 110 S.Ct. 506, 107 L.Ed.2d 508 (1989); *Restatement (Second) of Contracts* § 205(a) (1979) ("Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party...."). *See generally* Arthur L. Cor-

In fact, at oral argument, Burger King's counsel confirmed the existence of the implied covenant of good faith under Florida law. At the hearing on the present motion, the following colloquy occurred between the Court and Defendant's counsel:

> The Court: Now, do I gather correctly that you do agree there is such a thing as an implied covenant of good faith?
>
> Mr. Moxham: I do.
>
> The Court: All right. Well, that clears that air on the subject.
>
> Mr. Moxham: I have no qualms about their [sic] being a covenant of good faith applied in this contract.

*See* Transcript of the April 13, 1992 hearing on the Motion to Reconsider, at 30. The Court also remains confident that Florida law recognizes an independent cause of action for breach of this implied covenant of good faith. *See, e.g., Coira,* 429 So.2d at 23 (in finding that "there are no material issues of fact concerning the plaintiff's claim that defendant insurer breached" the implied covenant of good faith, court implicitly makes clear that a cause of action for breach of the covenant does exist).

With these issues settled, the Court's attention can next be directed at Defendant's principal argument in support of its Motion to Reconsider. Burger King contends that even if the covenant of good faith can generally be implied under Florida law, it nevertheless should not be implied here since the covenant cannot be invoked to override express contractual language. In effect, Burger King insists that the Franchise Agreement entered into between Plaintiff Scheck and itself expressly gave Burger King the right to undertake the very act complained of—specifically, authorizing the conversion of the Turnpike Howard Johnson's into a Burger King. Therefore, Burger King continues, this Court cannot imply a covenant of good faith into the Franchise Agreement.[6]

Burger King points to the following language in the Franchise Agreement: "This license is for the described location only and does not in any way grant or imply any area, market or territorial rights proprietary to FRANCHISEE."[7] *See* Franchise Agreement, at 2. Due to the presence of such language, Burger King maintains, this Court's analysis should be simple and brief: merely apply the Florida rule holding that "the obligation of good faith will not be implied in derogation of the express terms of a contract," *Fickling v. Burger King Corp.,* 843 F.2d 1386 [1987–1989 Transfer Binder] Bus. Franchise Guide (CCH) para. 9099, at 18,825 (4th Cir.1988) (applying Florida law), and thus enter summary judgment as to Count II.

In the January 1991 Order, however, this Court was entirely unreceptive to Defendant's analytical approach, and the Court remains unmoved by Burger King's position. As the undersigned made clear in the January Order:

> [T]his court declines to imply that so broad a right springs to Burger King from these words. The express denial of an exclusive territorial interest to Scheck does not necessarily imply a wholly dif-

---

bin, 3A *Corbin on Contracts* § 654A (P.P.1991); Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith,* 94 Harv.L.Rev. 369 (1980).

With respect to franchise agreements in general, it has been observed that:

> Some courts state that every franchise agreement includes an implied covenant of good faith and fair dealing. This implied covenant typically 'fills in the blanks' where the scope of the parties' rights and obligations are unclear as a result of contractual silence or ambiguity. Thus, it serves in aid and furtherance of other terms of the agreement of the parties, and protects the contracting parties' reasonable expectations.

62B Am.Jur.2d, *Private Franchise Contracts* § 348 (1990) (footnotes omitted).

6. In Burger King's own words, "[a]cts specifically authorized by the Franchise Agreement cannot constitute bad faith." D.E. # 20, at 22.

7. Burger King also directs the Court's attention to Paragraph 12 of the Uniform Franchise Offering Circular, which states that:

> Generally, franchisees receive no exclusive area or territory. Burger King Corporation has extended area development agreements in order to expand heretofore undeveloped but potential market areas. Such agreements are granted for a specific term and usually contain a strict schedule expediting development of the area. Exclusivity would preclude the establishment by Burger King Corporation owned or other franchisee-owned outlets in the area.

ferent right to Burger King—the right to open other proximate franchises at will regardless of their effect on the Plaintiff's operations.

*Scheck*, 756 F.Supp. at 549. No justification exists for departing from the Court's interpretation of the Franchise Agreement. It is evident that although the language of the Franchise Agreement states that the *franchisee* cannot expect an exclusive territory, such language does not even mention the franchisor, let alone does the language provide that Burger King retains the unlimited right to establish Burger King franchises at any location desired.

That the Franchise Agreement does not address this subject is quite notable, for it thus becomes apparent that there exists no explicit contractual language that this Court is overriding by virtue of implying a covenant of good faith and fair dealing into the Agreement. Because there is no express language in the Franchise Agreement providing that Burger King can establish Burger King restaurants *wherever* it so pleases, and because Florida law recognizes the implied covenant of good faith and fair dealing,[8] this Court properly denied summary judgment. For these exact same reasons, furthermore, the pending reconsideration motion cannot succeed.

Significantly, in denying the reconsideration motion, this Court does not issue a ruling that in any way challenges Defendant's oft-cited rule of law that the covenant of good faith cannot be implied in derogation of the express terms of a contract. Indeed, determining whether such a legal principle actually exists under Florida law is a determination this Court need not and has not made, for this Court has never once found that the express language of the Franchise Agreement gives Burger King the very right which Burger King argues it possesses—that is, the right to franchise other restaurants at any location desired. Clearly, this Court's decision to permit the Plaintiff to present to a jury his claim for breach of the implied covenant of good faith and fair dealing does not run contrary to established law or the Franchise Agreement entered into by the parties.

Also needing emphasis is the fact that this Court's Order does *not* grant the Plaintiff an exclusive territory in contravention of a contractual provision denying him such a right. Rather, the Court is merely finding that since the Franchise Agreement did not explicitly give Defendant an unfettered right to establish Burger King restaurants at any locale selected—indeed, did not even mention the rights of Burger King with respect to establishing franchises proximate to existing Burger King restaurants—Plaintiff can argue before a jury that Defendant breached the implied covenant of good faith when it sanctioned the Marriott Corporation's conversion of the Howard Johnson's restaurant into a Burger King.[9]

8. *See* note 5 *supra* for a description of the implied covenant of good faith.

9. Such an observation demonstrates that this Court's resolution of the present motion departs from the factual foundation upon which Plaintiff Scheck structures his argument. Plaintiff's argument flows from the initial premise that "Scheck acknowledges that Burger King has reserved by contract the discretion as to where new Burger King restaurants will be located." D.E. # 81, at 2. From this factual assumption, Plaintiff then goes on to cite a number of decisions where the implied covenant of good faith or some related concept is discussed against the backdrop of a contract where one party is granted some discretionary power. These cases, Plaintiff argues, confirm that even though Burger King reserved discretion to establish new franchises, such discretion had to be exercised reasonably, and as such, summary judgment was not warranted under the facts. Plaintiff also presents cases which Plaintiff reads as applying "the covenant of good faith in a manner which could be said to override the express terms of a contract." *See* D.E. # 81, at 4–5.

Plaintiff's arguments, however, are not even reached by this Court, let alone embraced, for the Court did not in its January Order, and has not today, found that the contract explicitly gives Burger King the discretion to establish new Burger King franchises. In other words, this Court's decision does not rest on the position advanced by Plaintiff that the contract *expressly* gave Burger King the discretion to determine where to place new Burger King restaurants. As such, much of the case law cited to by Plaintiff is not directly on point, for these cases entail instances where courts confronted a contract actually granting one party some type of discretionary power. *See, e.g., Carvel Corp. v. Diversified Management Group, Inc.,* 930 F.2d

Undoubtedly, it is Burger King's failure to make explicit in the Franchise Agreement the rights Burger King claims it carved out for itself which has created the very situation Burger King now confronts. Had the Defendant entered into a Franchise Agreement with the Plaintiff in which the Agreement explicitly stated that Burger King maintained the sole and unlimited right to establish other Burger King restaurants at any location desired, both the Court's analysis, and the ultimate conclusion reached today, would have likely differed.

As previously intimated, due to this Court's interpretation of the Franchise Agreement, much of the case law cited to by Burger King is simply inapplicable to this cause.[10] While the Court found that the Franchise Agreement did not expressly authorize the particular act alleged to have constituted the breach, the decisions which Burger King argues conflict with the Court's denial of summary judgment involve cases where a contract did expressly authorize the acts that allegedly breached the covenant. Indeed, these decisions principally stand for a legal proposition not even implicated by this case; in particular, that the covenant of good faith and fair dealing will not be implied in contradiction of an express contractual provision. *See, e.g., Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 485 (5th Cir. 1984) ("The implied obligation to execute a contract in good faith usually modifies the express terms of the contract and should not be used to override or contradict them.") (citation omitted) (applying Louisiana law); *Carlock v. Pillsbury Co.*, 719 F.Supp. 791, 819–20 (D.Minn.1989) ("The Court therefore finds that the language in the franchise agreement which reserves to the franchisor and the trademark owner the right to distribute Haagen–Dazs products by any method bars plaintiffs' claim that the mass distribution of prepackaged pints constituted a breach of the implied covenant of good faith and fair dealing. Plaintiffs' claim is contrary to the express language of the franchise agreement and must therefore be dismissed.") (footnote omitted) (applying New York law); *Patel v. Dunkin' Donuts of America, Inc.*, 146 Ill. App.3d 233, 100 Ill.Dec. 94, 96, 496 N.E.2d 1159, 1161 (1986) (Because "the parties did address the competition issue in the franchise agreement by giving defendants the right to establish a new business at its own discretion and on its own terms[,] ... there is no way the implied covenant of good faith can be expanded to bar defendants from opening a new franchise within one mile of plaintiffs' business."); *Rado–Mat Holdings, U.S., Inc. v. Holiday Inns Fran-*

10. Burger King argues that this Court's decision runs contrary to near universal agreement among all the courts that have confronted this

228, 231 (2d Cir.1991) ("While the distributorship agreement gave Carvel considerable discretion...."); *Junikki Imports, Inc. v. Toyota Motor Co., Ltd.*, 335 F.Supp. 593, 597 (N.D.Ill.1971) ("Article II, section 1 of the agreement provides that 'Distributor may accept in whole or in part' any of the Dealer's orders for Toyota products."). Here, however, there existed no contractual language granting Burger King the discretionary power to establish new franchises in any manner it desired and at any location selected, and therefore, Plaintiff's case law is of little assistance.

Of course, however, the preceding comments are *not* meant to disclaim the reality that where the covenant of good faith and fair dealing is, in fact, implied into a franchise agreement, decisions by a franchisor as to where to establish new franchises must be made in good faith and in a reasonable manner so that a party's right to enjoy the fruits of the contract is not obviated.

very issue. Moreover, this established body of case law, Burger King posits, is especially significant and of "greater precedential value" due to the "difficulties inherent in defining and applying the implied covenant of good faith and fair dealing...." D.E. #71, at 11.

Even assuming that the cases Burger King cites were directly on point, and supportive of the position articulated by the Defendant, *see* pp. 697–99 *infra* (distinguishing much of this case law), it still must be stressed that this Court will not blindly embrace the reasoning or analysis adopted by courts outside this Circuit merely because the implied covenant of good faith and fair dealing involves an intricate and amorphous legal construct. If anything, when a court confronts a significant and complex legal issue, a *greater* need arguably arises for thorough, exhaustive and independent analysis, and not merely jumping on the precedential bandwagon, as Defendant seems to urge. Moreover, and most importantly, as argued in the text *infra*, the Court's decision certainly does not turn established precedent on its head.

*chising, Inc.,* No. 76747, slip op. at 5 (N.Y.Sup.Ct. Dec. 13, 1991) ("Under the facts in this case, [the] implied covenant of good faith cannot contradict or alter an explicit term set forth in a contract."); *Super Valu Stores, Inc. v. D–Mart Food Stores, Inc.,* 146 Wis.2d 568, 431 N.W.2d 721, 726 (App.1988) ("it would be a contradiction in terms to characterize an act contemplated by the plain language of the parties' contract as a 'bad faith' breach of that contract.").

In essence, these cases spotlight one party attempting to invoke the implied covenant of good faith notwithstanding express contractual language authorizing the very acts alleged to have breached the covenant. Unlike these decisions, however, in the case at bar, Burger King did not pursue an act expressly and specifically authorized by the Franchise Agreement, as that Agreement is read by this Court. Consequently, most of the cases that Burger King argues are contrary to this Court's decision are not directly on point, and therefore, the precedent-setting value of the Court's decision today is not nearly as immense as Defendant suggests; this Court is simply not issuing a decision contravening the rule expressed in the case law holding that the implied covenant cannot override an explicit contractual term.

Defendant Burger King turns specifically to this body of case law in support of the argument that "[w]here a franchisee, in its franchise agreement, gives up all rights to an exclusive territory, it cannot thereafter claim breach of the implied covenant of good faith when the franchisor opens a competing store in the vicinity." D.E. # 71, at 9. Unlike Burger King, however, this Court does not read the previously mentioned cases as standing for so broad a proposition.

Admittedly, in each of these cases, there apparently existed contractual language *denying* an exclusive territory or an exclusive license or an exclusive distribution area to a franchisee or a licensee. *See Domed Stadium,* 732 F.2d at 483 n. 1;

*Carlock,* 719 F.Supp. at 802–03; *Patel,* 496 N.E.2d at 1159; *Rado–Mat,* slip op. at 5; *Super Valu,* 431 N.W.2d at 723. However, as the preceding parentheticals illustrated, each of these contracts *also* contained explicit language *granting* the franchisor/licensor the right to establish competing franchises/businesses or to issue competing licenses or to pursue competing business opportunities. *See Domed Stadium,* 732 F.2d at 483 n. 1 (The agreement provided that "the Licensor has, and shall continue to have during the life of this license agreement ... the right to construct and operate one or more Holiday Inns at any place other than on the site licensed hereby."); *Carlock,* 719 F.Supp. at 819 ("[T]he franchisor and its parent companies explicitly reserved the right to distribute Haagen–Dazs ice cream by any method."); *Patel,* 496 N.E.2d at 1159 (The agreement stated that " 'DUNKIN' DONUTS, in its sole discretion, has the right to operate or franchise other DUNKIN' DONUTS SHOPS under, and to grant other licenses in, and to, any or all of the PROPRIETARY MARKS, in each case on such terms and conditions as DUNKIN' DONUTS deems acceptable.' "); *Rado–Mat,* slip op. at 4 ("The Commitment Agreement and License Agreement contains precise language, reserving to itself the right to license any business activity at any location...."); *Super Valu,* 431 N.W.2d at 723 ("Super Valu retained the 'right to choose and select its ... retailers and to enter into Super Valu Retailer Agreements with other parties at Super Valu's sole choice and discretion....' ").

Clearly, the factual realities of these decisions demonstrate that this case law does not stand for the extremely broad rule of law propounded by Burger King. That is, contrary to Defendant's contention, these cases do not hold that if a contract has only denied an exclusive territory to a franchisee, the franchisee cannot thereafter claim breach of the implied covenant of good faith if the franchisor establishes additional franchises near the franchisee.[11]

---

11. To the extent that some courts may indeed read these and similar cases as standing for such a proposition, these non-controlling cases are herein rejected as unpersuasive.

A more accurate description of the rule to be gleaned from this case law is as follows: where the contract denies an exclusive territory to the franchisee, *and* where the same contract grants to the franchisor the right to establish competing franchises at will, a court cannot imply the covenant of good faith.[12] However, as the Court has previously observed, the rule of law proffered by these courts is not implicated here.

Although much of Defendant's case law is, therefore, not directly on point, the Court still must confront the *Fickling* decision. In that case, the Fourth Circuit apparently interpreted the exact same language contained in the Franchise Agreement entered into between Scheck and Burger King, and found that such contractual language barred a cause of action under Florida law for breach of the implied covenant of good faith in a case where Burger King had authorized two new Burger King franchises near Plaintiffs' franchises. *See Fickling,* [1987–1989 Transfer Binder] Bus. Franchise Guide (CCH) at 18,824–18,825. The *Fickling* court determined that the plaintiffs "failed to raise a genuine issue regarding Burger King's failure to comply with the enforceable unambiguous express terms of the contract." *Id.* at 18,825. This conclusion was reached not because the plaintiffs failed to submit sufficient evidence of Burger King's bad faith, but because "[u]nder Florida law, the obligation of good faith will not be implied in derogation of the express terms of a contract." *Id.* (citations omitted).[13]

Naturally, being a Fourth Circuit decision, the *Fickling* case is at most persuasive authority. More importantly, however, this Court simply does not find *Fick-ling* persuasive, and thus, the Court does not accept the conclusions reached therein. In doing so, this Court is not in any way suggesting that the legal propositions articulated by the *Fickling* court are flawed, but rather, this Court is departing from the *Fickling* court's reading of the language of the Franchise Agreement. This Court, unlike the *Fickling* court, is simply not convinced that the language of the Franchise Agreement gives Burger King the unlimited right to establish Burger King restaurants at any location it so selects. Overall, this Court finds that neither the *Fickling* decision nor the other case law presented by Burger King justifies reconsidering the denial of summary judgment.

Concluding, it seems clear that Florida law recognizes the implied covenant of good faith which applies to most contractual relationships. Indeed, that concept can and should be read into the contract in question. Whether it applies to the specific provisions under consideration is the key question here. Because of the absence of language in this contract of adhesion which would preserve unto Defendant the clear right to do that which would be, under other circumstances, unreasonable, the implied covenant must be considered and a factual inquiry is mandated.

Defense counsel, properly recognizing that alternative, argued forcefully (as will be developed hereinafter) that the actions of Burger King were so clearly reasonable that summary judgment should be granted for that reason as well. The Court disagrees. If a franchise agreement gives the franchisor the right to build (or permit building) another store next door to the one earlier permitted, it had better say so in clear terms. If it does not—if the fran-

---

**12.** Alternatively, these cases can be read as holding that irrespective of whether an exclusive territory is explicitly denied to the franchisee, a court simply cannot imply the covenant of good faith where the contract grants to the franchisor the right to establish additional franchises at any location desired.

Regardless of which of these particular holdings is extracted from this case law, the Court is confident that given the contractual language emphasized and the arguments presented by the courts in these decisions, Burger King's case law does not endorse the principle that where a contract has only denied an exclusive territory to the franchisee, a court cannot imply the covenant of good faith when the franchisor establishes competing franchises near existing ones.

**13.** Plaintiff's attempt to distinguish *Fickling* on the grounds that the plaintiffs in that case "failed to present any evidence that Burger King's conduct was unreasonable" (D.E. # 81, at 6) is not persuasive.

chisor has not given unto itself the right to be predatory—then it should be prepared to defend its position on a good faith—that is, reasonable conduct—basis.

Actually, and as indicated, oral argument on the instant motion only served to further confirm the propriety of denying summary judgment. Burger King's counsel commented as follows:

Now, Your Honor raises the question, well, what if they sought out, because they did not like [Mr. Scheck], because somebody within the Burger King operation had it in for him, what if they sought out to put in a restaurant across the street, or otherwise, to deprive him of his business and knock him out entirely?

Of course, that's wrong. No Judge in this world would think that that was right and would let anybody get away with intentionally trying to force somebody out of business when you have a contractual relationship....

We don't have a problem with that. That is not this case. It is not close to this case.

. . . .

No way is this case involving any evidence, anything at all like that we have seen in *Photovest*, in which there was a deliberate attempt on the part of the franchisor to force out the franchisee.

*See* Transcript of the April 13, 1992 hearing on the Motion to Reconsider, at 31–32; *see also id.* at 50 ("There may be a case where, under the wrong set of circumstances, where under true bad faith, as we know it really means, that somebody sets up a restaurant across the street, and they do so with the intention of driving the franchisee out of business. That's a different story. We do not have that here.").

These remarks are very revealing, for they suggest that Burger King is agreeing that a cause of action *can* in theory lie for breach of the implied covenant of good faith based on the instant Franchise Agreement. But of course, Burger King maintains, under the present facts, summary judgment is justified because the evidence so clearly presents a scenario different from the hypothetical discussed at oral argument. Nonetheless, it is significant that Burger King is seemingly admitting that if a factual scenario is presented similar to the hypothetical, a legitimate cause of action would exist.

It should further be noted that this Court agrees with Burger King that a factual scenario can certainly be imagined where it is unmistakably clear that the implied covenant of good faith has, in fact, been breached by a franchisor. Additionally, the Court agrees with Burger King's implicit notion that the specific factual circumstances of a case are critical to determining whether that case presents a scenario sufficiently similar to the hypothetical mentioned at oral argument such that the implied covenant can be said to have been breached. Yet, whereas Burger King argues that the facts here are so dissimilar to the hypothetical (and the *Photovest* decision) as to justify entry of summary judgment, this Court finds instead that given both the factual record and the governing summary judgment standards, *see* note 3 *supra,* jury questions remain, and so, summary judgment becomes inappropriate.

Lastly, it is necessary to address Burger King's contention that this Court's decision "will have an extremely negative effect on [Burger King's] administration of its nationwide franchise system." D.E. # 70, at 2. To such a suggestion, a few observations are warranted. First, the ruling now under reconsideration was first handed down in January of 1991, and still, more than a year later, the Burger King franchise system seems to have survived. Furthermore, the problem Burger King has created for itself is a readily remedied problem; rewrite the Franchise Agreement to more clearly, unequivocally and unquestionably grant to Burger King the specific rights which Burger King argues now exists under the present Franchise Agreement.

Third, and as already emphasized, neither the Court's Order today, nor the Order issued in January of 1991, represents a departure from established precedent, let alone do these Orders carve out some here-

tofore unheard of legal theory. Because Florida law recognizes an implied covenant of good faith and fair dealing, as well as a cause of action arising under such a legal construct, the Court's decision today certainly does not involve a radical deviation from governing law. Nor is the Court today challenging the principle that the implied covenant of good faith cannot contradict an explicit contractual provision, for the Court can discern no aspect of the Franchise Agreement in which Burger King explicitly reserves for itself the right to establish Burger King restaurants at any desired location. Given such realities, the Court is not convinced that the decision today will significantly and substantially interfere with Burger King's administration of its franchise system. Since much of the Court's decision rests on an interpretation of a contractual provision, and not on the rejection of established legal principles, the serious consequences that Defendant predicts will befall Burger King because of this decision do not give the Court great concern. But more significantly, and as a concluding thought, the Court finds it appropriate to inform the Defendant that a litigant's opportunity, indeed right, to bring forth a recognized, established and valid cause of action shall not be impeded by this Court merely because Burger King fears some undefined threat to the efficient administration of its franchise system. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Defendant's Motion to Reconsider is DENIED.

DONE and ORDERED.