736 So.2d 138 (1999)
Edith HOLD and David Hold, Appellants,
v.
Nicolas A. MANZINI and Manzini & Stevens, P.A., Appellees.
No. 98-1887.
District Court of Appeal of Florida, Third District.
June 30, 1999.
*139 Bailey, Harper, Baker, Arencibia & Agudo, and W. Bruce Harper, and Richard H. Gaines, Ft. Lauderdale, and Tracy L. Kramer, Bay Harbor Island, for appellants.
Cole, White & Billbrough, P.A. and G. Bart Billbrough, Miami, for appellees.
Before GERSTEN, GODERICH, and GREEN, JJ.
GREEN, J.
Edith Hold and her husband, David Hold, appeal an adverse final summary judgment in their legal malpractice action against their former attorneys, Nicolas A. Manzini and Manzini & Stevens, P.A. (collectively "Manzini firm"). The trial court essentially concluded that a general release executed by the Holds in favor of the Manzini firm barred this action. We disagree as a matter of law and reverse for further proceedings.
In 1994, the Holds retained the Manzini firm, along with a New York firm, to defend them in a federal lawsuit brought against them by Tralins and Associates, a professional association d/b/a Tralins & Richman ("Tralins suit"). During the course of the Tralins suit, the plaintiffs served a demand for judgment against the Holds for $50,000 pursuant to section 768.79, Florida Statutes (1993). As alleged in this malpractice action, the Holds rejected this demand for judgment based upon the Manzini firm's advice that the Florida offer of judgment statute was inapplicable to federal diversity cases and that in any event, their only exposure to attorney's fees in the Tralins suit would be, at most, no more than $3,000 under the Florida Deceptive and Unfair Trade Practice Statute Act, section 501.2105, Florida Statutes (1993). Ultimately, the Tralins suit proceeded to a trial by jury and on January 27, 1995 the plaintiffs received a verdict in their favor for $66,829.52. Thereafter, Tralins moved for attorney's fees and costs against the Holds pursuant to their offer of judgment and in accordance with Tanker Management, Inc. v. Brunson, 918 F.2d 1524, 1528 (11th Cir. 1990). On February 10, 1995, the Manzini *140 firm filed its written opposition to this motion on behalf of the Holds, arguing that pursuant to Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Florida offer of judgment statute is procedural and therefore, inapplicable in a federal diversity case.
While the motion for an award of attorney's fees and costs was pending in the Tralins suit, a dispute arose between the Manzini firm and the Holds resulting in the Holds seeking to discharge the Manzini firm. At the time, the Manzini firm claimed that the Holds owed it $30,000 in outstanding legal fees. To arrange the Manzini firm's dismissal, the Holds agreed to immediately pay the Manzini firm $15,000 in full satisfaction of the outstanding legal fees. When the Holds delivered this payment, the Manzini firm requested the Holds to execute a general release in the firm's favor which stated in pertinent part that:
That I, EDITH HOLD a/k/a EDITH HOROVITZ, first party
* * *

HEREBY remise, release, acquit, satisfy, and forever discharge the said second party, of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which said first party ever had, now has, or which any personal representative, successor, heir or assign of said first party, hereafter can, shall or may have, against said second party, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of these presents.

I hereby declare that I am sui juris; that I have been represented and counseled by an attorney prior to executing this Release. (emphasis added).
Prior to executing this release, the Holds had their New York counsel review it and upon their advice, the Holds executed the release on April 7, 1995.
Thereafter, on August 21, 1995, a federal magistrate conducted an evidentiary hearing on the plaintiffs motion for fees and costs in the Tralins suit and recommended in its report that the plaintiffs motion be granted for $100,000.83. The magistrate found Tanker, and several Florida Supreme Court decisions[1] holding section 768.79 to be substantive in nature, to be dispositive. The next day, the Manzini firm filed a renewed motion to withdraw its representation of the Holds in the Tralins suit. This motion was granted by order of the federal magistrate on August 24, 1995. In an order dated September 13, 1995, the United States District Court judge to which this case was assigned affirmed the magistrate's report and recommendations granting the plaintiffs motion for attorney's fees and costs. Pursuant to this order, an amended final judgment awarding attorney's fees and costs nunc pro tunc was thereafter entered in favor of the plaintiffs and against the Holds on October 3, 1995. This final judgment was not appealed.
The Holds then brought this legal malpractice and breach of fiduciary duty action against the Manzini firm for its alleged negligent legal advice about the applicability of section 768.79 to the Tralins suit. The Manzini firm moved for summary judgment on the grounds that the general release, executed by the Holds, after consulting with independent counsel, barred all claims arising out of the Manzini firm's representation of the Holds in the Tralins suit. Specifically, in its motion for summary judgment before *141 the lower court, the Manzini firm argued that the release, by its terms, contemplates any claim which the Holds had or could have had against it from the beginning of time up until April 7, 1995. The trial court granted this motion. The Holds now appeal and assert that the trial court erred in its determination that the terms of the general release executed in favor of the Manzini firm precludes this action. We agree.
"Under Florida law, a general release `will ordinarily be regarded as embracing all claims or demands which had matured at the time of its execution.'" Scheck v. Burger King Corp., 756 F.Supp. 543, 547 (S.D.Fla.1991) (quoting Sottile v. Gaines Constr. Co., 281 So.2d 558, 561 (Fla. 3d DCA 1973)). Conversely, a general release, similar to the release executed by the Holds, does not bar a claim which had not yet accrued when the release was executed. See Scheck, 756 F.Supp. at 547. In construing the terms of the general release executed in this case, we are, of course, guided by established principles governing the construction of contracts. Where the language of the release is clear and unambiguous, a court "`cannot indulge in construction or interpretation of its plain meaning,'" Delgado v. Government Employees Ins. Co., 528 So.2d 23, 24 (Fla. 3d DCA 1988) (quoting Hurt v. Leatherby Ins. Co., 380 So.2d 432, 433 (Fla.1980)); where the terms of the release are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intentions which cannot properly be resolved by summary judgment; see Langner v. Charles A. Binger, Inc., 503 So.2d 1362, 1363 (Fla. 3d DCA 1987) (citations omitted); "any ambiguities must be construed against the party who chose the language used." Delgado, 528 So.2d at 24 (citation omitted).
We find that in accordance with the clear and unambiguous terms of the general release in this case, the Holds released the Manzini firm only from any and all claims which they had or could have had against the firm up to the date of the execution of the release or April 7, 1995. Indeed, that is precisely the interpretation which the Manzini firm advanced to the trial court in support of its motion for summary judgment. On this appeal, however, the Manzini firm maintains that the release also bars any claims by the Holds for any causes of action accruing after its execution by virtue of the following language:
[W]hich said first party ever had, now has, or which any personal representative, successor, heir or assign of said first party, hereafter can, shall or may have against said second party, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of these presents. (emphasis added).
We do not believe that this language supports such an interpretation. We believe that the intent of this general release, as evidenced by the clear and unambiguous language employed, was for the Holds to release the Manzini firm for all claims which had accrued as of the date of its execution. It did not bar any claims that the Holds may have against the firm after the date of its execution.
The question for our consideration now is whether this malpractice action had accrued as of the date of the Holds' execution of the general release on April 7, 1995. Under well-established Florida law, we conclude that it had not. As we stated in Bierman v. Miller, 639 So.2d 627, 628 (Fla. 3d DCA 1994) and repeated in Taracido v. Perez-Abreu, Zamora & De La Fe, P.A., 705 So.2d 41, 42 (Fla. 3d DCA 1997), review granted No. 92,695, 729 So.2d 393 (Fla. June 30, 1998):
No cause of action for legal malpractice "should be deemed to have accrued until the existence of redressable harm has been established." Miller filed suit prematurely, as he has not yet suffered redressable harm. One of the central issues in the federal suit is the viability *142 of the severance agreement[.] ... Until the validity of the agreement is decided in federal court there can be no determination in the malpractice action as to whether Bierman was negligent in negotiating and drafting that agreement. (citations omitted).
In a legal malpractice action, the plaintiff must prove: "(1) the employment of the attorney; (2) the lawyer's neglect of a reasonable duty; and (3) that the attorney's negligence was the proximate cause of loss to the client." Lenahan v. Russell L. Forkey, P.A., 702 So.2d 610, 611 (Fla. 4th DCA 1997). Redressable harm relates to the third element of a legal malpractice claimthe element of damages. Id. at 611. Redressable harm cannot be established until an adverse final judgment has been rendered against the client. See Silvestrone v. Edell, 721 So.2d 1173, 1175 (Fla.1998). Until that time, a legal malpractice claim is hypothetical and damages are speculative. See id. at 1175.
In the instant case, the Holds did not sustain the redressable harm of which they now complain in this malpractice action until the United States District Court adopted the magistrate's recommendations and entered its final judgment imposing attorney's fees and costs against them in the Tralins suit on September 13, 1995, approximately five months after their execution of the general release in favor of the Manzini firm. The fact that the Holds were aware of the Tralins' pending motion for fees and costs and their possible exposure to the same at the time of their execution of the general release is of no moment as their mere knowledge of possible malpractice is not dispositive of when a malpractice action accrues. See Zuckerman v. Ruden, Barnett, McCloskey, Smith, Schuster & Russell, P.A., 670 So.2d 1050, 1051 (Fla. 3d DCA 1996). As stated earlier, the test for determining when a legal malpractice cause of action has accrued is based upon the establishment of redressable harm. See id.; see also Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323, 1325 (Fla.1990); Bierman, 639 So.2d at 628. Thus, since the Holds did not release the Manzini firm for claims accruing after the date of the general release, such as the claim in this action, the summary judgment entered in favor of the firm in this case was error.
Reversed and remanded for further proceedings.
NOTES
[1] See Timmons v. Combs, 608 So.2d 1 (Fla. 1992); Leapai v. Milton, 595 So.2d 12 (Fla. 1992).