962 So.2d 1056 (2007)
The PLUMBING SERVICE COMPANY, Appellant,
v.
TRAVELER'S CASUALTY & SURETY COMPANY, etc., Appellee.
No. 5D06-1586.
District Court of Appeal of Florida, Fifth District.
August 24, 2007.
Thomas P. Malone of Thomas P. Malone, P.A., Orlando, for Appellant.
Michael C. Sasso and Brian D. Solomon of Michael C. Sasso, P.A., Winter Park, for Appellee.
TORPY, J.
Appellant was a sub-subcontractor on a public construction project for which Appellee was the payment bond surety.[1] Appellant made a claim under the payment bond, which was eventually settled, culminating in the execution of a release by Appellant in favor of Appellee and others. Thereafter, Appellant brought the instant action claiming that Appellee had acted in bad faith in its handling of Appellant's claim. Appellee raised the release defensively. The trial court granted summary judgment, having determined that Appellant's claim had been released. We reverse because the unambiguous language *1057 of the release does not include Appellant's bad faith claim.
On March 14, 2000, the University of Central Florida contracted with Centex Rooney/Construct Two to construct student housing. Appellee issued a payment bond for the use and benefit of claimants on the project. Centex entered into a subcontract with Progressive Plumbing, Inc., for Progressive to perform the plumbing work on the project. Progressive then hired Appellant to perform some of the plumbing work.
After a dispute developed between Appellant and Progressive, Appellant stopped working on the project on or about February 1, 2001. Representatives of Appellant and Progressive met on February 14, 2001, and agreed upon the amount of money due Appellant for the work it had performed. When payment was not made, Appellant sued Appellee on the payment bond.
While that suit was pending, on or about August 14, 2001, Appellant filed a "Civil Remedy Notice of Insurer Violation" against Appellee with the Department of Insurance, pursuant to section 624.155(2), Florida Statutes (2001). The notice alleged, among other things, that Appellee violated sections 624.155(1)(b)1 and 3 by: (1) failing to acknowledge claims and act promptly; (2) denying claims without conducting a reasonable investigation; (3) not attempting in good faith to settle claims; and (4) failing to promptly settle claims. Appellee received a copy of the civil remedy notice on August 14, 2001.
On March 5, 2003, Appellant, Appellee and Progressive (who had intervened in the lawsuit) entered into a Settlement Agreement under which the parties agreed that Appellant had a valid claim under the bond and was entitled to recover. Appellee agreed to pay Appellant a total of $76,566.40, representing principal, interest, court costs and attorney's fees. Appellant, in turn, agreed to dismiss the lawsuit upon payment of all specified sums. The Settlement Agreement included the following release language:
5. Progressive Plumbing, Inc. and TRAVELER'S CASUALTY & SURETY COMPANY, as Successor-in-Interest to Reliance Insurance Company for good and valuable consideration, the sufficiency of which is hereby acknowledged and confessed, hereby release, remise, waive, discharge and satisfy all causes of action whether known or unknown, demands of every kind or character and any and all claims they have or may have whether known or unknown against THE PLUMBING SERVICE COMPANY its employees and/or officers from the beginning of the world through the date hereof. This release specifically includes any and all claims that Progressive Plumbing, Inc. and/or TRAVELER'S CASUALTY & SURETY COMPANY, as Successor-in-Interest to Reliance Insurance Company has attained by assignment from Ashco Enterprises, Inc. d/b/a Metro Staffing Services or any other claims that they may have attained by assignment or otherwise.
6. Upon the payment and clearance of all settlement funds set forth hereinabove, [THE PLUMBING SERVICE COMPANY] shall release, remise, waive, discharge, and satisfy all causes of action whether known or unknown, demands of every kind or character and any [sic] all claims that Plaintiff has or may have whether known or unknown against Progressive Plumbing, Inc., Centex Rooney Construction Co., Inc./Construct Two Construction Managers, Inc., a joint venture and TRAVELER'S CASUALTY & SURETY COMPANY, as Successor-in-Interest to Reliance Insurance Company their employees and/or officers from the beginning of the world through February *1058 14, 2001 relating solely to the project that is the subject of the above-styled action that is more fully described in paragraph 5 of the Complaint herein. This release shall only be effective upon the payment and clearance of all settlement sums set forth hereinabove otherwise; it is void.
(Emphasis added).
After settling its bond payment lawsuit, Appellant filed the instant action claiming bad faith. The allegations in the lawsuit are similar to those contained in the presuit notice. Appellee filed a motion to dismiss the complaint, affirmative defenses, and a motion for summary judgment, all relying, at least in part, on the release contained in the Settlement Agreement. After hearing, the lower court granted the motion, finding that the release was a complete defense to all claims associated with the payment bond, including Appellant's bad faith claim. This appeal timely followed.
Our disposition of this case turns first on our interpretation of the scope of the release. Here, the release does not specifically mention which of Appellant's claims are extinguished. Instead, the release uses general release-like language purporting to extinguish "all" claims. However, unlike the release language used by the parties in paragraph 5, which favors Appellant, the seemingly broad release in favor of Appellee in paragraph 6 is limited in temporal scope to a period ending on February 14, 2001. Any claims that accrued after that date, therefore, are unaffected by the release. Accordingly, the second issue we must resolve is whether Appellant's bad faith claim accrued within this temporal window. Based upon the language of the statute creating the cause of action, we conclude that the claim did not accrue until after February 14, 2001.
Section 624.155, Florida Statutes (2001), authorizes persons damaged by certain actions of an "insurer," including an insurer's bad faith failure to settle, to file a civil suit against the insurer.[2] As a prerequisite to filing suit, the person alleging damage must first file a notice of violation with the Department of Insurance and send a copy to the insurer. Section 624.155(2)(d), Florida Statutes (2001), allows the insurer to cure any violation within 60 days of the filing of a notice of violation. It provides: "No action shall lie if, within 60 days after filing the notice, the damages are paid or the circumstances giving rise to the violation are corrected." Based on this language, Appellant's bad faith claim did not accrue until October 14, 2001. Therefore, it was not extinguished by the release. See Talat Enters., Inc. v. Aetna Cas. & Sur. Co., 753 So.2d 1278, 1284 (Fla.2000) (statutory claim for bad faith never comes into existence until expiration of 60-day window).
REVERSED AND REMANDED.
LAWSON and EVANDER, JJ., concur.
NOTES
[1] Appellee is the successor to the surety that posted the bond.
[2] Although not the basis upon which the trial court granted summary judgment, Appellee argues that it is not an "insurer" under the statute. It urges that the amendment to the statute in 2005, wherein the legislature expressly excluded certain sureties from the definition of "insurer," evinces a legislative intent that the statute was never applicable to these sureties. This argument was rejected by our high court in Dadeland Depot, Inc. v. St. Paul Fire & Marine Insurance Co., 945 So.2d 1216 (Fla.2006), which held that the amendment has prospective application only.