# Third District Court of Appeal

## State of Florida

Opinion filed May 22, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-794
Lower Tribunal No. 16-4683
_____


**Gino Falsetto, et al.,**
Appellants,

vs.

**Mitchell Liss, et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Abby Cynamon, Judge.

The Ferro Law Firm, P.A., and Simon Ferro, Jr., for appellants.

Wolfe Law Miami, P.A., and Richard C. Wolfe, for appellees.


Before EMAS, C.J., and LINDSEY and HENDON, JJ.

EMAS, C.J.

**INTRODUCTION**

Appellants, Gino Falsetto and Bernard Siegel, appeal an adverse partial summary judgment on their counterclaim and third-party claim against their former business partner, appellee Mitchell Liss.[1] The trial court concluded that the parties' 2014 Settlement Agreement (which included a general release) discharged appellants' fraud claims, and that "there is no issue of contested fact that the allegations of Fraud did not occur prior to the [2014 Agreement]."

We reverse, holding a genuine issue of material fact remains in dispute: whether appellants knew or reasonably should have known about the alleged fraud in 2014 when the release was signed—in other words, whether appellants' fraud claims had "accrued" at the time of the execution of the release.

**FACTS AND PROCEDURAL BACKGROUND**

A. The 2014 Settlement Agreement and General Release

Gino Falsetto and Mitchell Liss owned and operated three valet parking businesses: Double Park, Paradise Systems, and South Park. By agreement, "the parties were entitled to equal distributions and profits from the companies." However, the parties had a falling out and, in April 2014, Liss sued Falsetto for injunctive relief, appointment of a receiver, judicial dissolution of the companies,

---

[1] The parties' respective companies are also parties to the lawsuit. The appellant companies include: Double Park, LLC, Paradise Systems, LLC, and South Park, LLC. The appellee company is DP Systems.

2

and monetary damages. In June 2014, the parties entered into the subject Settlement Agreement (2014 Agreement), which released the parties

> from any and all disputes, claims, causes of action, . . . *whether past or present*, *known or unknown*, filed or unfiled at present with any federal, state, or municipal court . . . . from the beginning of the world to the Effective Date of this Agreement.

(Emphasis added). It also provided that: "The releases contained in this Agreement are intended to be as broad and inclusive as Florida law permits." Both parties were represented by counsel.

B. The Complaint, Counterclaim and Third-Party Claim

In February 2016, Liss and DP Systems sued Falsetto, Siegel, Double Park, Paradise Parking, and South Park for breach of the 2014 Agreement, alleging that appellants stopped making payments required under the 2014 Agreement. Appellants, in response, filed a counterclaim and third party claim against Liss, DP Systems, and John Battaglia[2] (Liss' business partner in DP Systems), alleging that Liss perpetrated a fraud and stole money from Paradise Parking. According to appellants, between 2010 and 2014 (before the 2014 Agreement was signed), Liss used his own company (DP Systems) to enter into a lucrative parking services contract with Latitude Condominium Association (Latitude). The "illegal subcontract," they explained, provided Liss $30,000 a month for his company's

---

[2] Battaglia was dismissed as a party in this appeal.

services. Meanwhile, Liss was using Paradise Parking (appellant) to provide all of the parking services to the Latitude and paying appellants only a nominal fee ($1000/month). Appellants alleged that they discovered the fraudulent arrangement during discovery in Liss's breach of contract lawsuit.

C. Motion for Summary Judgment

Liss moved for summary judgment on the counterclaim and defenses, contending they were barred by the 2014 Agreement's general release. To support his motion, Liss relied in part on an email between Falsetto and Liss dated June 5, 2014. Liss contended that the email showed Falsetto knew or should have known about the alleged fraud at the time the parties entered into the 2014 Agreement.[3] Appellants filed a response with attachments including separate affidavits from Siegel and Falsetto, stating that, at the time the 2014 Agreement was executed, they did not know (nor could they have known) Liss and Battaglia were partners in DP Systems or that they had created the company "to compete with Paradise and Double Park" and to "steal business" by "confusing prospective customers into

---

[3] The email read: "John Battaglia has been your partner and he still is and you and he have been operating the Parking operations at the Latitude since inception mostly for his benefit and yours. . . . You had always denied that John Battaglia was involved. Then when I confronted you with facts you finally admitted that you and John were partners. I know exactly who South Florida Management is so do not pretend that you are not involved . . . . [P]lease be advised that we will be addressing all of the outstanding and pending claims, lawsuit and other liabilities that you and John are clearly responsible for as Operators of the Latitude Account."

believing that they were contracting with Double Park and/or its affiliates." Both maintained they only learned of the fraud during discovery in Liss's breach of contract lawsuit.

At the hearing on the motion, appellants contended that the trial court could not consider the June 5th email in support of appellees' motion for summary judgment, because it had not been authenticated. Appellants further contended that the fraud claims had not yet accrued at the time the 2014 Agreement was signed because appellants did not know nor should they reasonably have known about the alleged fraud. The trial court did not explicitly rule on the admissibility of the June 5th email. However, in its order granting the motion, the trial court found that the 2014 Agreement released the claims of fraud because the alleged fraud occurred before the 2014 Agreement was signed, and that the June 5th email "clearly demonstrates that [appellants] knew or should have known of the facts supporting the claim of fraud . . . ." This appeal followed.

## DISCUSSION

Liss generally argues first, that the fraud claims are barred because the release prohibits "known and *unknown* claims;" and second, that the June 5th email shows appellants knew or should have known about the alleged fraud, specifically Liss's arrangement with Latitude. We find no merit in either argument.

"[T]he courts' willingness to enforce general releases is not absolute." Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So. 2d 306, 315 (Fla. 2000). Instead, "enforcement is premised upon the assumption that the released claims are those that were contemplated by the agreement." Id. Florida courts, including this Court, have explained that "a general release . . . does not bar a claim which had not yet accrued when the release was executed." Hold v. Manzini, 736 So. 2d 138, 141 (Fla. 3d DCA 1999); see e.g., Schornberg v. Panorama Custom Home Builders, Inc., 972 So. 2d 243 (Fla. 2d DCA 2007); The Plumbing Serv. Co. v. Traveler's Cas. and Sur. Co., 962 So. 2d 1056 (Fla. 5th DCA 2007); Floyd v. Homes Beautiful Constr. Co., 710 So. 2d 177 (Fla. 1st DCA 1998).

Despite Liss's argument to the contrary, a release of an "unknown" claim does not necessarily release an "unaccrued" or future claim, as the terms are not synonymous. For instance, in Schornberg, Traveler's and Floyd, the reviewing courts found that, to bar unknown claims in those cases, the claims must have accrued at the time the release was executed. Compare Schornberg, 972 So. 2d at 244 (release language: the homeowner "releases and discharges Builder . . . from any and all claims, . . . including, without limitation, attorneys' fees, of any nature whatsoever, *known or unknown*, suspected or unsuspected, existing at any time on or before the Effective Date") (emphasis added); Traveler's, 962 So. 2d at 1057 (release language: the parties agreed to "waive, discharge and satisfy all causes of

6

action *whether known or unknown*, demands of every kind or character and any and all claims they have or may have whether *known or unknown* against THE PLUMBING SERVICE COMPANY its employees and/or officers from the beginning of the world through the date hereof") (emphasis added); Floyd, 710 So. 2d at 178 (release language: the parties entered into a settlement and release agreement releasing Homes Beautiful from "*any claim or cause of action presently existing*, *whether known or unknown*, including but not necessarily limited to the [1986 civil suit]") (emphasis added); with Columbia Bank v. Columbia Devs., LLC, 127 So. 3d 670, 673 (Fla. 1st DCA 2013) (explaining the bank agreed to "release, remise, acquit and forever discharge Ross, Edwards, Smith [Jr.] and NFLG . . . from all . . . causes of action, of every kind and nature, *accrued or unaccrued, now known or hereafter discovered*, at law or in equity relating in any way to the Loan Documents and/or to the Property, . . .") (alterations omitted) (emphasis added); Patco Transp., Inc. v. Estupinan, 917 So. 2d 922, 923 (Fla. 1st DCA 2005) (finding a general release precluded an employee's petition for workers' compensation benefits where it barred "any and all past, present or *future claims*, . . . *which the Plaintiff now has, or which may hereafter accrue or otherwise be acquired*, on account of, or may in any way grow out of, or which are the subject of the Complaint (and all related pleadings)") (emphasis added). Because the Agreement in this case mutually released the parties from claims "past

7

or present, known or unknown"—but did not release future or unaccrued claims—its plain language requires us to hold that the parties were only released from causes of actions that had accrued at the time the parties signed the 2014 Agreement.

Liss relies on <u>Breamer Isle Condominium Association, Inc. v. Boca Hi, Inc.</u>, 632 So. 2d 707 (Fla. 4th DCA 1994) to suggest that because the 2014 Agreement released all "known or unknown" claims, it does not matter whether appellants knew or did not know about the alleged fraud. This reliance is misplaced. In <u>Breamer</u>, the condominium association "released all of the appellees for all claims (both known and unknown, as to one, <u>and all future claims as to the others</u>), which arose out of the construction of the condominium." <u>Id.</u> at 707 (emphasis added). The Second District held that the release of all claims in a prior lawsuit was enforceable in the second lawsuit even though the defects alleged in the second case "were not discoverable at the time it settled its prior lawsuit and executed releases to these defendants." <u>Id.</u> Unlike here, however, the contract in <u>Breamer</u> released the appellees from "all future claims." <u>See</u> <u>Floyd</u>, 710 So. 2d at 179 (distinguishing <u>Breamer</u> because the agreement in that case released "future" claims). The language in the 2014 Agreement renders the instant case distinguishable.

8

Because we conclude that the release does not bar unaccrued (or future) claims, we reach appellants' second argument—that the trial court erred in granting summary judgment in favor of appellee because a genuine issue of material fact remains in dispute:  Whether the fraud claims had "accrued" at the time the parties executed the 2014 Agreement.  We find there is a genuine issue of material fact, and therefore the trial court erred in granting summary judgment on appellants' fraud claims.

"The essential elements of a fraud claim are: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation."  Lopez-Infante v. Union Cent. Life Ins. Co., 809 So. 2d 13, 15 (Fla. 3d DCA 2002).  A fraud action accrues when the last element occurs or "when the plaintiff knew, or through the exercise of due diligence should have known, of the facts constituting the fraud."  Smith v. Bruster, 151 So. 3d 511, 514 (Fla. 1st DCA 2014).  The question then is whether appellants knew or should have known about the fraud at the time the parties signed the 2014 Agreement.

In answering this question, we first hold that the trial court erred in relying on the unauthenticated June 5th email.  See Bryson v. Branch Banking & Tr. Co., 75 So. 3d 783, 786 (Fla. 2d DCA 2011) (holding:  "The unauthenticated copies of

9

default letters purportedly sent to Bryson by BB & T were insufficient for summary judgment purposes because only competent evidence may be considered in ruling on a motion for summary judgment") (citing Tunnell v. Hicks, 574 So. 2d 264, 266 (Fla. 1st DCA 1991) (explaining that the court could not consider certain documents in its summary judgment decision because "Tunnell failed to attach either document to affidavits that presumably would have ensured their admissibility")); see also Bifulco v. State Farm Mut. Auto. Ins. Co., 693 So. 2d 707, 709 (Fla. 4th DCA 1997) (holding: "Merely attaching documents which are not 'sworn to or certified' to a motion for summary judgment does not, without more, satisfy the procedural strictures inherent in Fla. R. Civ. P. 1.510(e).")

Because the June 5th email should not have been considered, the evidence before the court on this question consisted of the allegations contained in the Falsetto and Siegel affidavits. The affidavits generally asserted that: Neither Siegel nor Falsetto knew or could have known that, at the time they executed the 2014 Agreement, Liss and Battaglia were partners in DP Systems and created the company "to compete with Paradise and Double Park and steal business from Paradise and Double Park by . . . confusing prospective customers into believing that they were contracting with Double Park and/or its affiliates," or that they "actually had a lucrative $30,000+ per month contract with Latitude."  Falsetto and Siegel also averred they discovered the alleged fraud during discovery in Liss's

2016 breach of contract lawsuit. These affidavits created a genuine issue of material fact on the question of whether Falsetto knew or reasonably should have known of the alleged fraud when he entered into the 2014 Agreement with Liss.

**<u>CONCLUSION</u>**

The 2014 Agreement's plain language released the parties only from "known or unknown" claims, not future or unaccrued claims. Because there is a genuine issue of material fact as to whether the fraud claim had accrued— that is, whether Falsetto knew or through the exercise of due diligence should have known about the alleged fraud at the time the 2014 Agreement was executed—the trial court erred in granting summary judgment on those fraud claims. We reverse and remand for further proceedings.